342 So.2d 202 (1977)
STATE of Louisiana
v.
Oran O'QUINN and Charles LaFleur.
No. 57792.
Supreme Court of Louisiana.
January 28, 1977.
Rehearing Denied February 25, 1977.
*204 Joe A. Brame, Gary A. Book, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., James L. Babin, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Oran O'Quinn and Charles LaFleur were charged with theft of guns and knives of a value of more than $1020.00. After verdicts of guilty, each was sentenced to six years at hard labor.
Marshall LaFleur, the brother of Charles, testified for the State to the effect that he and the two defendants had entered the residence of Lamuel Oliver, had broken the glass front of a gun case, and had taken guns and other property from the unoccupied house. Other testimony showed that the three young men had tried to sell two of the guns to an uncle on the same night, and were seen in a wooded area the next morning close to the spot where the guns were later found by police.
Charles LaFleur took the stand, denied the theft, and explained his possession of the stolen property: Richard Hopkins, whom he had visited in the Oliver house, had told him the guns belonged to Hopkins, had borrowed the LaFleur car and had put the guns in the back seat. Charles LaFleur testified that the guns were hidden in the woods the next day because he, LaFleur, was on parole and would have been jailed if he had been found in possession of the weapons. The defense attempted to explain the younger brother's story of the theft as the result of a plea bargain.
Thirty-one bills of exception were reserved (this case was tried in 1973) and will be discussed as numbered in the record.
There is no error in Bill of Exception No. 1. Defendants object to the court's permitting the State to amend the bill of information to omit certain articles originally included as having been stolen by the defendants. The amendment did not change the grade of the offense, which was a violation of R.S. 14:67, but only reduced the total value of the items stolen from $1516.00 to $1020.00. "Before the trial begins the court may order an indictment amended with respect to a defect of substance." C.Cr.P. 487. There could have been no prejudice to the defendants by eliminating certain articles from those which the defendants were charged with stealing.
Nor was there error in Bill of Exception No. 2, when the trial court ruled that a district attorney's investigator would be permitted to talk with the witnesses during the course of the trial. C.Cr.P. 764 permits the sequestration of witnesses and a prohibition against their discussing the facts of the case "with anyone other than the district attorney or defense counsel." The article further permits the court to modify the order of sequestration "in the interest of justice." The record discloses that the trial judge carefully instructed the investigator about conversation with the witnesses. There was no abuse of the court's power in its order.
Bill of Exception No. 3 was reserved when the court overruled an objection to a prosecution question as "leading." The question was: ". . . were you with him in Lake Charles or in Elton, Louisiana?" The question was asked in the alternative, and did not suggest an answer. R.S. 15:277. There was no error in Bill No. 3.
In Bill of Exception No. 4 defendants complain of the overruling of their objection to the question: "What were they (the guns) doing there?" The objection was *205 that the question called for a conclusion of the witness. In context, the State was asking its witness, a participant in the crime, to relate how stolen property happened to be located in a wooded area. There is no error in Bill of Exception No. 4.
Bills of Exception Nos. 5 and 6 were taken when the court overruled defendants' objections to certain of the prosecutor's questions as being "repetitious and improper." The questions were not "improper." They were, indeed, to some extent, repetitious. However, the testimony of the witness had not been clear, and the prosecutor was justified in his effort to clarify the testimony. See Wharton's Criminal Evidence § 413 at page 293:
"Ordinarily, the court should expedite proceedings by eliminating the unnecessary, repetitious, or prolonged examination of witnesses. However, the court may permit the repetition of a question in the same or another form, after an unexpectedly adverse answer, or after the witness was at first reluctant and evasive in his answers. Moreover, a question which substantially repeats testimony already given by the witness is nevertheless permissible when its purpose is to clarify and elucidate such earlier testimony."
In Bills of Exception Nos. 7 and 8 the defendants complain that their cross-examination of the State's principal witness was wrongly curtailed. Marshall LaFleur was the younger brother of one of the defendants. He testified that he participated in the theft for which the defendants were on trial. Defense lawyers sought to examine him concerning some previous "trouble" Marshall LaFleur had been in, related to marijuana, and had sought to read aloud the original bill of information, to which Marshall LaFleur had pleaded guilty.
The trial court was clearly in error in its reasons for denying the defendants the right to question the witness about the original bill of information. However, defense counsel never made clear the relevance of their effort to read to the jury the portion of the bill of information as it had been written, before it was amendment. The witness admitted the theft. He admitted pleading guilty, and had received a suspended sentence.
It is closer question with respect to the marijuana "trouble." It is clear from the whole record and from the briefs that this cross-examination was designed to weaken the effect of inculpatory statements given by Marshall LaFleur to police officers at an early stage of the investigation, and therefore weakened the witness' trial testimony which incriminated the defendants. Defense lawyers were attempting to demonstrate that an inculpatory statement had been given to a deputy named "Kotch" Guillory, either as a result of a threat to prosecute a marijuana conviction in another parish, or a promise not to prosecute.
However, we are not satisfied, as the trial judge was not, that there was any relationship between any inculpatory statement and the existence of a marijuana offense in another parish. The deputy mentioned was called by the State as a witness, was cross-examined, and testified to no inculpatory statement, and was not asked about any promises or threats toward the witness Marshall LaFleur. The record does not demonstrate any prejudice to the defendants.
Bill of Exception No. 9 was reserved when the court overruled a defense objection to a question: "Did the other two people there know they were in possession of stolen property when they had those items in the car?" The question was asked for two reasons: the defense cross-examination seemed directed toward showing that the guns were taken during a drunken spree; the prosecution was attempting to demonstrate that the owner of the guns had not given permission for them to be taken from his house. Although the question might be characterized as "conclusionary," it was a shorthand method of obtaining relevant information from the witness. There is no merit to the bill.
Bills of Exception Nos. 14, 15 and 18 through 24 are related to the introduction of certain real or demonstrative evidence, *206 among which were pieces of glass, a piece of rug and an oil can found some twenty to thirty feet away from and across a path from where the stolen guns were found in the woods. Also introduced by the State were paint scrapings and pieces of glass taken from a gun cabinet in the victim's home. The State further introduced pieces of glass and carpet samples taken from an automobile of one of the alleged perpetrators and photographs of the interior of the automobile. Several objections in connection with the introduction of this evidence are not clear.
In Exception No. 14 defense counsel argue that the pieces of glass, piece of rug and oil can found in the woods should not have been admissible because they were not shown to be connected with or relevant to the case.
The rule defining relevant evidence is set forth in R.S. 15:441:
"Relevant evidence is that tending to show the commission of the offense . . .
"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
The evidentiary fact offered does not need to have strong, full, representative value, or to produce persuasion by its role and intrinsic form, but it is sufficient if it is worth consideration by the jury. See State v. Freemen, 306 So.2d 703 (La.1975) and State v. Giles, 253 La. 533, 218 So.2d 585 (1969).
The State in the instant case needed to prove that the defendants had been in possession of the guns stolen from the victim's house. Apparently the State sought to prove this fact in part by showing that fragments of glass from the victim's gun cabinet were found with the guns in the woods, at the edge of the highway some twenty to thirty feet away from the guns, and in the car of one of the alleged perpetrators. The State apparently tried to show that the piece of carpet found with the glass beside the road was the same as that in the automobile. All of this real evidence was relevant under the test given above.
In Exceptions Nos. 15 and 24 defense counsel objected to introduction of the paint scrapings and glass from the victim's gun cabinet on the ground a proper foundation had not been laid. The argument is that the deputy sheriff who collected the items could not say for certain that the house from which they were taken belonged to the victim. However, they were sufficiently identified to be admitted.
In Exceptions Nos. 21, 22 and 23 defendants argue that a proper foundation was not laid for the introduction of items found in the automobile. Defense counsel contend the State should have shown that the items in the car were not tampered with before they were photographed by the deputy sheriff and removed.
In Exceptions Nos. 18, 19 and 20 defendants object to the trial court's refusal to allow defense counsel to question the State's photographer about the possibility that items in the automobile were tampered with before the photographs were taken.
It is difficult to understand why the defendants were not permitted to cross-examine the State photographer about his knowledge of the objects photographedthat is, whether they had been moved or rearranged before the pictures were made. However, there was so much direct testimony about the objects, their identity, and their location that it is also difficult to perceive any prejudice to the defendants. No issue was ever made, either during the trial or in brief later, that the photographs did not truly depict their subject matter. Although the defendants were entitled to a wider range of cross-examination than was allowed, no prejudice is shown and therefore these bills are without merit.
Bill of Exception No. 10 was taken because no "proper foundation" had been laid; no foundation was necessary, because the question called for relevant factual evidence.
*207 Bill of Exception No. 11 was a hearsay objection, without merit, made when the State's witness was asked to read aloud markings on a gun barrel.
Bill of Exception No. 12 is argued in brief as a hearsay objection. At trial the objection was made that "no foundation" had been laid for the testimony. No foundation was necessary; if the testimony was objectionable as hearsay, the reasons for the objection must have been made to the trial judge. C.Cr.P. 841.
Bill of Exception No. 13 complains that a State witness was allowed to comment on what was represented by certain photographs. We consider the testimony as supplying evidence that the photographs accurately depict their subject matter, and, consequently, the bill is without merit.
Bill of Exception No. 16 was reserved when the district attorney objected to an incomplete question. The objection was sustained by the trial judge, probably because of the prolonged cross-examination of the witness. Subsequently, however, the trial judge permitted the defense lawyer to complete his question. Again the district attorney objected, without giving any basis for his objection, and the trial judge again sustained. The question asked was whether the price for used guns at other places in the locality would be less than the price testified to by the expert witness. The record does not show a valid reason for not permitting the question. However, the record seems to disclose that the owners of the only two outlets for used guns in the area appeared and testified. Both witnesses were cross-examined, and no prejudice is demonstrated.
Bill of Exception No. 16A was taken when the court denied a motion to continue the hearing on a motion for a new trial. The request was made to obtain time to file an amended motion to include specific information about witnesses. That request was denied, because it appeared that there had been ample time to amend the motion before the day on which it was fixed for trial. Defense counsel further stated that "within the last sixty seconds" they had learned of additional information in the nature of newly discovered evidence, and acquired additional time to file an amended motion for a new trial.
The transcript of the motion for a new trial is not before us. In brief counsel for defendants simply state that the disposition of a motion for continuance was within the sound discretion of the trial court, but that good grounds had been established for granting the motion.
The record does not reflect, nor do the briefs, that the trial judge did not have before him all the information which defendants wished to put in an amended motion for a new trial. Nor has such an amended motion for new trial been filed to this date. See C.Cr.P. 853. We cannot say that the trial court abused its discretion in denying the motion.
In Bill of Exception No. 16B, on the motion for a new trial, the defendants complained, in addition to previously reserved bills of exception, that the verdict was not supported by the evidence. The basis of the contention is that the defendants were charged with the theft of property of a total value of not less than $1020.00; that the evidence showed the stolen property was worth a total of only $857.50; that the jury returned a verdict of "guilty."
R.S. 14:67, the theft statute, provides for graduated penalties in the event of conviction. If the property taken is valued at less than $100.00, the penalty for a first conviction is imprisonment for not more than six months, or a fine. If the property taken is valued at $100.00 or more, but less than $500.00, the penalty is imprisonment with or without hard labor for not more than two years, and a fine. When the property taken is valued at $500.00 or more, the maximum penalty for a theft is provided as imprisonment with or without hard labor for not more than ten years, and a fine.
There is no question but that the stolen guns and knives were of a value of more than $500.00. As long as the jury found the value to be in excess of $500.00, the defendants *208 were exposed to the same penalty. There was ample and undisputed evidence that the property taken was worth more than $500.00. Whether it was worth $1020.00 is of no significance as to the gravity of the offense with which defendants were charged. They were exposed to the maximum penalty as long as the guns and knives were worth more than $500.00. There is no substance to Bill of Exception No. 16B.
Bill of Exception No. 17 was reserved after a witness had been qualified as an expert in chemical analysis. There was no error in the judge's ruling. The record establishes that the witness was qualified by education and experience.
Bill of Exception No. 25 was reserved when the defendants requested, but were denied, a continuance because of the absence of a defense witness. The witness had been in jail at the commendement of the trial, but had posted bond during the trial and was released. This became known during the progress of the trial. The court issued a bench warrant for the witness, and the record shows that the sheriff's office made an effort to locate him. Before the trial ended, it was reported to the court that the witness had left the State and was then in Texas. The witness, whose name was Hopkins, was subsequently brought back to the State of Louisiana. There is, in the record before us, a minute entry of his conviction, after the trial, but before a decision on the motion for a new trial, for contempt of court for failure to respond to the summons. The record in the case makes it apparent that Hopkins would have been an unfriendly, if not a hostile, witness, because the defense was that Hopkins, not the defendants, was the one who placed the stolen guns in defendant LaFleur's automobile. Since it developed during the trial that Hopkins was not within the jurisdiction of the State of Louisiana and would not be available to testify, it is clear that the ruling of the trial judge in denying the requested continuance (recess) was correct, and the bill is without merit.
Bill of Exception No. 26 was reserved when the district attorney was allowed to ask a witness the new price of a certain rifle. The ruling was correct; the new cost is relevant in determining the value of a used rifle.
Bill of Exception No. 27 was reserved when the trial court refused to order a subpoena duces tecum issued to the sheriff's office for the production of records showing the date of the report of the theft of the property involved. There seems to be no reasons why the defendants were denied the request for the subpoena. The correct date was desired, according to defense attorneys, to permit the defendants to produce a possible alibi defense. The trial judge denied the request for the reason that the date the theft was reported was not relevant to establish the date on which the offense occurred. There appears to be no satisfactory reason why the district attorney objected to the production of a document which might prove the date of the offense. Nevertheless, two of the participants in the crime testified that the guns were taken the night before they were found in the woods. That date was clearly established by numerous witnesses, without any confusion. Consequently, the defendants suffered no prejudice from the failure to obtain the police report showing the date the offense was reported.
Bill of Exception No. 28 was reserved when the trial court sustained an objection to defense counsel asking defendant whether his brother Marshall could read. The defendant had already testified that his brother could not read, and further testimony on the point was superfluous.
Bill of Exception No. 29 was reserved when the trial court sustained another objection by the prosecutor to "this line of questioning." Defendant was being questioned about the contents of a note which he wrote while in jail. The content of the note was described in testimony taken while the jury was excused. Once again, it is difficult to understand the reason for excluding the evidence. On the other hand, *209 however, no prejudice appears from the exclusion, because the content of the note was incriminating. In the note, the defendant LaFleur testified that he requested his younger brother Marshall to sign statements and "testify to other burglaries that have taken place in Moss Bluff. If you would, you would be guaranteed probation, and me and Oran would be cut loose." The defendants suffered no prejudice from the failure to place this evidence before the jury.
Bill of Exception No. 30 was reserved to the court's instruction to the jury that one in unexplained possession of stolen property is presumed to be the thief, but that the presumption may be overcome or destroyed by evidence to the contrary. The objection was that the charge constituted a comment on the evidence. This, of course, is not correct. The charge itself does not comment on the evidence, and the charge as a whole makes it clear that the trial judge did not refer to the evidence and did not express any opinion as to the evidence. The charge covered the presumption of innocence, the requirement that the State prove beyond a reasonable doubt every element of the offense, including specific criminal intent. The reference to unexplained possession of stolen property is found in the section of the charge which defines the crime of theft, listing ten elements of the offense which must be proved. The charge was not objectionable for the reasons stated by the defense (but see, State v. Montoya, 340 So.2d 557 (La.1976). See also, State v. Searle, 339 So.2d 1194 (La.1976); State v. Wingerter, 339 So.2d 1 (La.1976).
In Bill of Exception No. 31 defendants objected to the charge concerning the lesser included crime of unauthorized use of movables. Apparently, the portion of the charge objected to was the court's explanation that the crime of unauthorized use of movables does not require an intent to deprive the owner of the property permanently, but that "he may be guilty of this lesser offense even though he intended to take or use the property temporarily." There was no error in the charge, and no merit to the bill.
The convictions and sentences are affirmed.