412 So.2d 507 (1981)
STATE of Louisiana
v.
James Louis HUMPHREY.
No. 80-KA-2414.
Supreme Court of Louisiana.
July 2, 1981.
On Rehearing March 12, 1982.
Rehearing Denied April 30, 1982.
*510 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., L. K. Knapp, Jr., Dist. Atty., Robert R. Bryant, Jr., Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Richard P. Ieyoub, of Baggett, McCall, Singleton, Ranier & Ieyoub, Thomas L. Lorenzi, Lake Charles, for defendant-appellant.
MARVIN, Justice Ad Hoc.[*]
Defendant was convicted on circumstantial evidence of two counts of manslaughter (La.R.S. 14:31(2)(a)) and appeals his conviction and his sentences of 15 years at hard labor consecutively on each count. We affirm the conviction but vacate the sentence and remand to allow the trial judge to recite the factual basis for sentence in accord with CCrP 894.1. State v. Fields, 394 So.2d 597 (La.1981). Defendant makes 9 arguments on 15 assignments of error.

THE FACTS
Viewed in the light most favorable to the prosecution and from the viewpoint of a rational trier of fact applying the reasonable doubt standard,[1] the evidence shows that the defendant lived in Lake Charles in a common law relationship with Mona Brouchet, the mother of his two children, who were the homicide victims. One child, Janice, was 22 months old, and the other, Latasha, was 9 months old, at the time of their deaths.
The mother fed the children and left them at the family home with the defendant father about 6:00 p. m. on Friday, April *511 28, 1978. A seven-year-old neighbor, Joseph Breaux, saw the 22-month-old child alive shortly after the mother left to visit relatives of the defendant where she remained until about 11:00 p. m. Defendant's sister, Della Lane, did not enter the house but came to the front door about 9:00 p. m. and saw the defendant, apparently sleeping on the bed with the children and lying partially on Latasha. The defendant left the home for several minutes sometime after 10:00 p. m. and told a male friend (Howard) in a park about two blocks away that Mona had done "something bad, bad, bad" to the children and that defendant was "afraid" that he might be going to jail for it. The defendant and his friend returned to defendant's home shortly before Mona returned around 11:00 p. m. These three adults played cards without anyone mentioning the welfare of the children. Mona, however, did check on the children, who appeared to be just sleeping, to see if they were wet or had fever. Defendant's friend departed after midnight and defendant and Mona then went to sleep.
Defendant and Mona awakened about 8:00 a. m. Defendant told Mona that he would go to the store for her and that she should stay at home and "clean up" the children. Mona then discovered the lifelessness of the children and, at defendant's instruction, summoned assistance.
Other evidence showed that defendant had previous convictions for such things as drunkenness and aggravated battery and that in Mona's presence during the early morning hours of April 25 the defendant slapped Janice about her head, waked up Latasha and began beating Latasha about her face. Mona attempted to stop defendant and then went to a neighbor's home to report this conduct to the police. Mona and another neighbor, Irene Brooks, thereafter saw bruises about Latasha's face and eyes.
Defendant's version of the events of April 28-29 was that he came home about 8:00 p. m. on April 28 to find the children in bed and Mona watching television. According to defendant, Mona left the house shortly after he arrived and he then took a nap on the bed with the children until about 11:00 p. m. Defendant said when he awoke and noticed that the children were lying still and not breathing, he then got scared and went to the nearby park where he met Howard, whose testimony is summarized above.
The deputy coroner, accepted as an expert pathologist, testified that he had performed an autopsy on each of the victims to determine the cause and the time of the deaths. Because of the conditions of their bodies, the contents of their stomachs, and his observation and tests, the deputy coroner's professional opinion was that each child had died about the same time from the injuries received and that death could have occurred as early as 3:00 p. m. on April 28 or as late as 3:00 a. m. on April 29 and within one to two hours after the children received their respective injuries. Latasha died of bruises and swelling to the head and brain. Janice died of a broken neck. The injuries to both were inflicted by the use of force upon their bodies. The deputy coroner's examination revealed other bruises to each body, and a crushing injury and resulting fractures of Latasha's ribs. The deputy coroner also testified that his examination revealed that Latasha's femur had been fractured at an earlier time, longer than one month before her death.

ASSIGNMENT OF ERROR NO. 3
On motion of the State, the trial court allowed the District Attorney to amend before trial, the Grand Jury indictment from 2d degree murder to manslaughter. Even if defendant had objected to the amendment, the court's allowing the amendment was not error as defendant contends. CCrP 487, State v. Sheppard, 350 So.2d 615, 627, fn. 1 (La.1977). See also CCrP 841.

ASSIGNMENT OF ERROR NO. 4
Defendant objected to the admissibility of the mother's testimony in chief of the defendant's battery upon the children on April 25, 1978. The State gave defendant notice of its intent to use this evidence to prove that the April 28, 1978, battery was *512 intentional. This court's decision on defendant's writ application, State v. Humphrey, 381 So.2d 813 (La.1980)[2], does not preclude further review on appeal of the merits of defendant's argument of inadmissibility under State v. Hatcher, 372 So.2d 1024 (La.1979).
The deputy coroner's testimony does not show that any injuries earlier than about 2:00 p. m. on April 28, 1978, contributed to the respective cause of death of the children. The deputy coroner's testimony does show, however, that the respective injuries that caused death were inflicted by the use of force upon the children by another person.
In the notice to defendant to use evidence of the battery of April 25, 1978, on the children, as required by Prieur [277 So.2d 126 (La.1973)] and its progeny, the State said its purpose in offering that evidence was to show that defendant's alleged battery of April 28, 1978, on the children was intentional. Defendant argues that a CCr 31(2)(a) manslaughter does not contain the element of intent, that "proof of the act of battery is proof of both the crime and the general criminal intent required",[3] that intent was not a contested issue at the trial, and that evidence of the alleged April 25, 1978, batteries was too prejudicial to have been admitted under any justification.
Intent, if an element of the crime charged, is always a contested issue at a trial because the plea of not guilty requires the State to prove beyond a reasonable doubt that defendant committed every element of the crime. Art. 1, § 16, La. Constn., LRS 15:271.
Criminal intent relates not to the conduct, usually an act which must be committed voluntarily under Art. 8, but to the consequences of that conduct under Art. 9. See and compare CCr Arts. 8-11, and Comments thereunder.
The words act and intent have acquired generally accepted meanings in tort as well as in criminal law.
"The meaning of `intent' is that the person who acts either (1) consciously desires the physical result of his act [`actively desires' is the language of La.Cr.C. Art. 10(1)] ... or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result. [`Reasonably certain to result' is the language of La. Cr.C. Art. 10(2).] Thus, intent has reference to the consequences of an act rather than to the act itself. Restatement (Second) of Torts ... LaFave and Scott, Criminal Law ... see also, Prosser ...
"Our criminal and civil codes manifest legislative acceptance of these received meanings of `act' and `intent.' As the criminal code articles and reporter's comments make clear, `act' refers to an external manifestation of will which must be voluntary, and `intent' is present whenever the offender either [actively] desires the consequences of his act or when he knew that the consequences were reasonably certain to result from his act. La. R.S. 14:8, 10 and Reporter's Comments." Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981) Emphasis supplied. Bracketed material supplied.
Intent, as an element of crimes relating to the consequences of an act, may be general or specific. CCr 10. In absence of qualifying provisions, the term intentional in the criminal code has reference to only general criminal intent.
"The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms `intent' and `intentional' *513 have reference to `general criminal intent.'" CCr Art. 11
A homicide that is committed under circumstances which indicate that the offender actively desired his conduct to result in the consequences of either death or great bodily harm is either a Murder I (Art. 30), a Murder II (Art. 30.1), or an Art. 31(1) Manslaughter, all of which crimes contain the element of specific intent because of the qualifying provisions of these articles relating to intent. Art. 11, Art. 10(2).
A 31(2) manslaughter expressly does not require the element of specific intent to kill or inflict great bodily harm.
"Manslaughter is:
* * * * * *
"(2) A homicide committed, without any intent to cause death or great bodily harm [:]
"(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person ..." CCr 31(2)(a) Emphasis supplied.
While the term intentional misdemeanor directly affecting the person is not defined in the Criminal Code, it is obvious that the Code requires that a 31(2)(a) manslaughter occur during the perpetration of an intentional misdemeanor, the consequences of which directly affect the person of another (the general intent of Art. 10(2)).
Battery is defined in the code:
"Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." CCr Art. 33
"Simple battery is a battery committed without the consent of the victim ..." CCr 35
It is axiomatic that within the manslaughter context and within the fair import of the term intentional misdemeanor directly affecting the person, battery is one of intentional misdemeanors out of which a homicide (the consequences of force or violence upon another) might arise.[4]
General criminal intent is a state of mind element and exists
"... whenever there is specific intent, and also when the circumstances indicate..., in the ordinary course of human experience, ... the prescribed criminal consequences [were] reasonably certain to result from [the offender's] act ..." Art. 10(2). See Bazley v. Tortorich, supra.
Under Art. 9, criminal consequences are those consequences prescribed in the code as necessary to constitute the particular crime defined. Here the particular crime is a 31(2)(a) manslaughter, a homicide committed when the offender is engaged in the perpetration of a simple battery, an intentional misdemeanor directly affecting the person. The crime of simple battery contains the element of general intent. Art. 10(2), Arts. 33, 35. In this respect the State is required to prove the act (that the defendant used force or violence upon the person of another) and the consequences of that act (that in the ordinary course of human experience, the result of that act, a direct affect upon the person of another, was reasonably certain under the circumstances). Even though the offender did not actively desire these consequences (the specific intent of Art. 10(1)), the jury, as instructed and in order to convict, must find that the circumstances indicate that these consequences, in the ordinary course of human experience, were reasonably certain to result from the offender's conduct (the general intent of Art. 10(2)). To use the Bazley v. Tortorich language, which tracks CCr Arts. 10 and 11,

*514 "... [general] intent is present whenever the offender either [actively] desires the consequences of his act or when he knew [or in the ordinary course of human experience, should have known] that the consequences were reasonably certain to result from his act." Bazley, supra, at p. 481. Bracketed material supplied.
In this respect, the term intentional misdemeanor directly affecting the person in Art. 31(2)(a) contains the element of general criminal intent. State v. Brumfield, 329 So.2d 181 (La.1976) is not inapposite because this court's perhaps overbroad observation there that some felony and misdemeanor manslaughters are committed upon proof that the accused voluntarily did the act, was made in response to the prosecutor's somewhat incorrect argument to the jury of the law applicable to verdicts responsive to a charge of 2d degree murder. This court noted that some crimes which may reduce 2d degree murder to manslaughter do not require specific intent. The issue, squarely presented here and decided affirmatively, is that general criminal intent is an element of a manslaughter which is committed when the offender is engaged in the perpetration of an intentional misdemeanor directly affecting the person.
The issue presented under this assignment is whether the extraneous crime evidence of April 25 is admissible as tending to prove the element of general criminal intent, that the consequences having a direct affect upon the person of each victim were reasonably certain to result from the defendant's use of force upon each victim on April 28, 1978.
State v. Hatcher, supra, at p. 1033, citations of authority omitted, set forth the circumstances under which extraneous crimes evidence may be admitted:
"This Court has held to be admissible, for limited purposes, proof of other crimes exhibiting almost the identical modus operandi or system, committed in close proximity in time and place ...
"In order to be admissible the extraneous offense evidence must meet several tests: (1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; ... (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; ... (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character ... (4) the other crimes evidence must tend to prove a material fact genuinely at issue; ... (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect ..."
While the testimony of the policeman (Sweeney) who was called to the defendant's home on April 25, did not corroborate the mother's testimony that defendant had hit and bruised the children on April 25, her testimony was supported by the witness, Irene Brooks, who stated that she saw bruises on the children the next day. Essentially, the policeman (Sweeney) testified that Mona, the mother, told him after he arrived that the children were all right and he observed that the children in the bedroom of defendant's home appeared normal. Mona's testimony was also supported in part by the testimony of a neighbor (Ethel Geyen) whose telephone Mona used to call the police. Additionally, the jury heard testimony of witnesses about visibility in the home provided by only two electric lights and a television screen. While the testimony of the extraneous crime evidence might not have met the test of reasonable doubt, we cannot say that the trial court erred in finding that evidence clear and convincing, the first of the several tests of Hatcher.
The second test of Hatcher is also met because in the alleged incident of April 25, according to Mona, the defendant hit and bruised the children and it is shown here that Latasha died of the bruises and resulting swelling to her head that were inflicted on April 28. Because the evidence of the *515 April 28 manslaughters is circumstantial, the corollary question under Hatcher of whether it is "logical" to say that the two crimes are the work of the same person is answered under defendant's assignment of error No. 13 that the circumstantial evidence presented did not exclude every reasonable hypothesis of innocence. LRS 15:438.
The third and fourth tests of Hatcher are met because the element of general criminal intent is genuinely at issue in this circumstantial evidence case. Upholding admissibility of extraneous crimes evidence of a design or system to show intent, Hatcher observed:
"It may be argued that proof of a design, plan, system or scheme is completely foreclosed except where continuity of the offense, knowledge or intent is a material issue in the case. La.R.S. 15:446 provides that `where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged.' However, it appears more likely that the legislature intended to prohibit the introduction of evidence of a design or scheme in cases in which the evidence has no substantial relevance other than to demonstrate criminal propensity. Since the occurrence of a crime is not genuinely at issue in most prosecutions, evidence of design, plan, system or scheme usually will be inadmissible except to show knowledge and intent. But in the few cases in which the actual occurrence of crime is genuinely at issue, the design evidence has relevance independent of the defendant's propensity and should be admitted if it meets all of the other tests. In accord with general authority, Louisiana courts have admitted other crimes evidence for purposes other than those listed in the statutes. See, State v. Sutfield, 354 So.2d 1334 (La.1978)." 372 So.2d at p. 1035. Emphasis supplied where underlined.
In some crimes intent is not a real and genuine issue. See State v. Herman, 358 So.2d 1282 (La.1978), where other crimes evidence was held not admissible to prove intent or guilty knowledge in an armed robbery prosecution because proof of the robbery itself was found to be proof of intent and knowledge needed to commit the robbery. The element of force or intimidation in a robbery (Arts. 64, 65) is not qualified by the word intentional as that word qualifies either the misdemeanor directly affecting the person in Art. 31 or the force or violence in Arts. 33, 35. The statutory language is generally in accord with the pronouncements of the cases considering the issue.
"When ... intent forms an essential part of the inquiry, testimony may be offered of [the accused's] ... acts ... as tend to establish such ... intent ..." LRS 15:446, in part. Emphasis supplied.
This court has consistently recognized that while unrelated criminal activity of a defendant may not be used to show his present guilt, the commission of similar offenses may be admissible under Prieur guidelines for the purpose of showing intent where intent is an element of the crime charged. See Hatcher, supra, and authorities cited therein; State v. Harris, 383 So.2d 1 (La.1980); LRS 15:445, 446.
We have determined that the element of general criminal intent (that the homicide occurred during the perpetration of an intentional misdemeanor directly affecting the person of each child) is present in the circumstances of this charge. Under Art. 1, § 16, La.Constn. and LRS 15:271, the State must prove this element beyond a reasonable doubt. The trial court did not err in determining that defendant's intentional use of force upon these children on April 25 was sufficiently probative as tending to establish the material fact that defendant's use of force upon these same children on April 28 was intentional and as outweighing the prejudicial effect of admitting the April 25 incident under proper instructions. See Harris, supra, at p. 8.

*516 ASSIGNMENTS OF ERROR NOS. 5 AND 8
Defendant complains that the admissibility of eight color photographs was error because their probative value did not outweigh their alleged prejudicial effect. Other photographs in black and white show the position of the bodies of the children in the home. The color photographs essentially show, in different poses, the head and shoulders of each child. A close examination of these photographs also reveals the apparent bruises. The photographs do not show distorted facial features, blood, or lacerations, and we find them not gruesome or inflammatory and not likely to have overwhelmed the reason of the jury toward a conviction without sufficient evidence. Under these circumstances we find no error. State v. Gilmore, 332 So.2d 789 (La.1976); State v. Vernon, 385 So.2d 200 (La.1980).

ASSIGNMENT OF ERROR NO. 9
The trial court did not err, as defendant contends, in allowing, over his objection of irrelevancy, the deputy coroner to testify that the autopsy revealed that Latasha had a femur broken more than a month before her death. The broken femur was a condition of the body when the doctor made his examination. The doctor did not attempt to show how the fracture occurred, but testified only to its existence and the fact that it did not contribute to the cause of death and occurred before the battery of April 25 or April 28. Much discretion is afforded the trial court in determining issues of relevancy. Error in determining the issue is not fatal unless defendant demonstrates prejudice. State v. Johnson, 343 So.2d 155 (La.1977).

ASSIGNMENT OF ERROR NO. 10
It was not error, as defendant contends, for the court to find the child witness, Joseph Breaux, competent to testify. Understanding, and not age, is the test of competency. LRS 15:469. Joseph was seven years old when the crime occurred and nine years old when he testified. The trial court questioned and observed the child at length to test the sufficiency of his understanding of the oath, the trial, and of his ability to recall the events about which he testified. A child's sometimes hesitant answers do not necessarily indicate incompetency. The determination of the trial judge that a child witness is competent is based not only upon the child's answers to questions testing his understanding, but is also based on the child's overall demeanor on the witness stand, and is entitled to great weight. State v. Thompson, 364 So.2d 908 (La.1978).

ASSIGNMENT OF ERROR NO. 11
In this assignment, the defense witness Franklin "Frankie" Jenkins testified that he knew the parents, the children, and the State's witness, Della Lane, and that "about three years ago", before the birth of Latasha, he saw Della Lane "beat" the older child, Janice. Frankie Jenkins' testimony thereafter was excluded as irrelevant by the trial court, but is in the record by proffer. The excluded testimony is to this effect: that Della Lane slapped the baby (Janice) and Janice fell off her feet and cried, and that Della disliked children and had pinched other young children. Defendant contends that the trial court erred in excluding the proffered evidence.
It is the trial judge's responsibility to determine admissibility related to issues of relevancy, to issues of collateral impeachment, and to issues of remote circumstances that may tend to shed light upon the ultimate issue (reasonable hypothesis of innocence) in a circumstantial evidence case. See LRS 15:441, 492, 494; State v. Martin, 310 So.2d 544 (La.1975); State v. Cappo, 345 So.2d 443 (La.1977); State v. Jackson, 153 La. 517, 96 So. 53 (1923). The trial judge necessarily has some discretion in these areas and if error is committed and this court finds, beyond a reasonable doubt, that the error was harmless error in the light of the total circumstances, the defendant's conviction will not be overturned. See State v. Gibson, 391 So.2d 421 (La.1980); State v. Spell, 399 So.2d 551 (La.1981).
*517 Conceding error arguendo, in that the proffered evidence should have been admitted, we find that because Frankie Jenkins was allowed to testify to the crucial fact that Della Lane beat the child some three years earlier, the assumed error, we find beyond a reasonable doubt, was essentially harmless. State v. Gibson, supra. The testimony that was admitted (that Della Lane beat the child) is stronger than the testimony proffered (that Della Lane slapped the child off her feet). A beating more often implies the use of the fist or of a paddle or stick, while a slapping always implies the use of an open hand. Even though Della Lane went to the front door of the defendant's home about 9:00 p. m. on April 28, the defendant was present at that time, Della Lane did not enter the home, it is incredible to deduce that Della Lane could have beaten the children to death on the same bed as defendant was sleeping without him knowing it. Defendant's version to Howard on the night in question, blamed Mona, the mother, and not Della Lane. In any event, the jury heard the testimony that Della Lane beat the child, Janice, some three years earlier, and the exclusion of any further elaboration upon that testimony, if error, we find was harmless beyond a reasonable doubt.

ASSIGNMENTS OF ERROR NOS. 12 and 14
In State v. Catanese, 368 So.2d 975 (La.1979), this court held that polygraph evidence may be admitted in post conviction proceedings, within the discretion and guidelines of the trial judge wherever the evidence is reliable and will aid in the decision. In the light of this holding, defendant contends the trial court erred in denying his motion that he be administered a polygraph examination and in denying defendant's later proffer of the evidence of his polygraph examination made at his own expense.
The trial judge denied the first motion, reasoning that Catanese afforded him discretion and did not sanction the removal of a convicted felon from the place of incarceration to an "appropriate testing place." The trial judge concluded his reasoning by commenting that the defendant was not precluded from having a polygraph examination performed later at his own expense and "If that [a polygraph] comes about in the future, then, of course, the court would entertain another motion at that time." The trial judge then denied defendant's motion for a new trial and sentenced defendant, without defendant requesting a delay or continuance. CCrP 853 provides that
"A motion for a new trial must be filed and disposed of before sentence. The court, on motion of the defendant and for good cause shown, may postpone the imposition of sentence for a specified period in order to give the defendant additional time to prepare and file a motion for a new trial.
"When the motion for a new trial is based on ground (3) of Article 851, the motion may be filed within one year after verdict or judgment of the trial court, although a sentence has been imposed or a motion for a new trial has been previously filed; but if an appeal is pending the court may hear the motion only on remand of the case."
Defendant's motion with respect to the polygraph examination presents nothing in the way of "new and material evidence [which] ... if ... introduced ... would probably have changed the verdict ..." as provided in CCrP 851(3). When the trial judge was not available on the last day for filing of the appeal, defendant requested another district judge to hear and pass on his motion proffering the polygraph examination. Defendant sought to have the proffered examination admitted as a supplement to the record for review by this court of the trial court's denial of the motion for a new trial. The district judge hearing the proffer motion denied the proffer. Defendant could have sought a delay or continuance of the sentence (additional time in which to file his motion for a new trial). See CCrP 853; State v. Williams, 370 So.2d 516 (La.1979); State v. O'Quinn, 342 So.2d 202 (La.1977). A second motion for a new trial, after sentence, in these circumstances, however, would have been procedurally improper. *518 CCrP 853. Assignments 12 and 14 of themselves do not present reversible error.
However, since we are remanding for sentencing under defendant's Assignment No. 15, in the interest of justice and because defense counsel may have been somewhat misled by the trial judge's statement that he would "... entertain another motion at that time [the time the results of the polygraph became available] ...", we shall direct on remand that the trial judge consider the proffered evidence in light of defendant's prior motion for a new trial and again pass upon defendant's motion for a new trial before resentencing. See State v. Hillard, 398 So.2d 1057 (La.1981).

ASSIGNMENT OF ERROR NO. 13
Defendant argues that the trial court erred in denying his motion for a new trial on the grounds that the evidence did not exclude every reasonable hypothesis of innocence. This court has most recently summarized the circumstantial evidence rule:
"Regarding circumstantial evidence, R.S. 15:438 sets forth the rule that, in order to convict, the evidence must exclude every reasonable hypothesis of innocence. Under Jackson [v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)] the evidence is viewed in the light most favorable to the prosecution and from the viewpoint of a rational trier of fact. Therefore, when we review a conviction based upon circumstantial evidence we must determine that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded." State v. Austin, 399 So.2d 158 (La.1981).
Defendant's principal thrust in this assignment is that the hypothesis is reasonable that the mother, Mona, killed the children and that the child, Joseph Breaux, could be mistaken as to when he saw the children alive after Mona left the home. Under the circumstantial evidence rule, above quoted, we must view all of the circumstances in the light most favorable to the prosecution and as a rational trier of fact and determine beyond a reasonable doubt whether a rational trier of fact could conclude that every reasonable hypothesis of innocence has been excluded.
The testimony of Joseph Breaux corroborates Mona's testimony that the children were alive when Mona left the children at home about 6:00 p. m. with the defendant. Joseph Breaux's testimony also corroborates Della Lane's testimony that she went only to the front door of the home about 9:00 p. m. that night. Defendant noticed that the children were not breathing before Mona was transported to her home by defendant's relatives. If either Mona or Della Lane killed the children, it occurred at a time when defendant was present.
If the jury believed the State's witnesses, as they had every right to do, as to the facts about which they testified, the reasonable inference that defendant killed these children logically follows, a rational trier of fact could conclude that every other reasonable hypothesis had been excluded. The evidence need not exclude every other possible theory. Austin, supra. It is possible that someone other than defendant could have killed these children while defendant was sleeping or while he was away from the house with Howard. This possible hypothesis was and is argued, but the jury rejected that hypothesis as not being a reasonable hypothesis, as we do, because it strains at credulity and defies logic and reason to accept that the children could be killed in a small, almost one-room house without defendant's knowing of the killing or that during defendant's absence, someone (not Mona, who was with defendant's relatives) entered the home to commit the crime. This hypothesis is also illogical in the light of defendant's version to his friend, Howard, and his declaration the next morning to Mona.
We conclude that a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded by the evidence presented. Austin, supra.

*519 ASSIGNMENT OF ERROR NO. 15
We find merit in defendant's contention that the trial court erred in the sentencing procedure. Art. 1, § 20, La. Constn.; CCrP 894.1. The trial court, in sentencing defendant to serve 15 years consecutively at hard labor on each count of manslaughter, stated:
"In sentencing you, the Court has considered the guidelines set forth in Article 894.1 of the Louisiana Code of Criminal Procedure, and having heard the evidence in this case, it is felt that you need custodial care at this time; and to give you a lesser sentence would deprecate the seriousness of the crime in this instance."
The mere recitation of one or more factors set forth in the statute, without a statement of the particular considerations made and the factual bases for imposing sentence, does not satisfy Art. 894.1. State v. Fields, 394 So.2d 597 (La.1981). See also State v. Underwood, 353 So.2d 1013 (La. 1977).

CONCLUSION
Defendant's conviction is conditionally affirmed pending disposition on remand of the trial court's consideration of the proffered evidence of the polygraph examination and ruling on the motion for a new trial, which shall be accomplished before resentencing. The sentence is vacated and the case is remanded for further disposition and resentencing in a manner not inconsistent with this opinion.
REMANDED.
LEMMON, J., concurs.
DENNIS, J., dissents, believing that the other crimes evidence was improperly admitted.

ON REHEARING
LEMMON, Justice.
We granted a rehearing to reconsider the reasoning and the validity of our initial determination regarding the admissibility of evidence of defendant's prior beating of the two manslaughter victims.

I.
The evidence, viewed in the light most favorable to the prosecution, established that defendant's "common law wife" left her two children in defendant's care at 6:00 p. m. on April 28, 1978 and returned home around 11:00 p. m., at which time she observed the children in bed, but did not attempt to wake them until the following morning, when she discovered that they were dead.
The coroner's autopsy revealed that both children had died as a result of a vicious beating administered during the afternoon or evening hours of April 28 or the early morning hours of April 29. The circumstances clearly indicated that the children were brutally beaten and died during the same evening they were left in defendant's care.
Prior to trial, the prosecutor filed a Prieur notice advising defendant of his intention to introduce evidence that defendant assaulted both victims in the presence of their mother on April 25, less than four days before the attack which resulted in their deaths. See State v. Prieur, 277 So.2d 126 (La.1973). The prosecutor also sought to introduce evidence of a June, 1977 incident involving defendant and the same two victims. The prosecutor asserted the evidence was admissible "to show that the defendant possessed the requisite intent to perpetrate an intentional misdemeanor directly affecting the person [simple battery] at the time of the offense charged...."[1]
Defendant objected to the sufficiency of the notice and to the admissibility of the evidence of the two prior incidents. The trial court overruled the objection and clearly signalled an intent to permit the state to offer evidence of both incidents. *520 This court granted defendant's application for a pretrial determination of the admissibility of the prior crimes evidence and held that evidence of the April 25, 1978 incident was admissible, but ordered evidence of the June, 1977 incident excluded as "too remote". State v. Humphrey, 381 So.2d at 813, 815 (La.1980). At trial the judge accordingly admitted evidence of the April 25 incident, and defendant was convicted of manslaughter.

II.
Generally, evidence of other crimes is inadmissible when the only purpose is to prove disposition to commit crime. The evidence is excluded when offered to show such a disposition, not because the defendant's disposition is irrelevant, but because the great prejudicial effect outweighs the slight probative value as to the defendant's guilt of the charged crime. However, when the evidence is offered to prove some other issue which has more than marginal relevance, the rule of exclusion is simply inapplicable, and the test of admissibility is then one of weighing probative value against prejudicial effect. The underlying policy is not to prevent prejudice (since evidence of other crimes is always prejudicial), but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. See generally C. McCormick, Evidence § 190 (Cleary ed. 1972).
In Louisiana, R.S. 15:481's prohibition against the use of evidence of defendant's bad character effectively excludes the use of evidence of other crimes except as proof of some independently relevant and material issue other than defendant's criminal propensity. R.S. 15:445 authorizes the use of similar independent acts to prove intent as to the charged offense. R.S. 15:446 authorizes the use of such acts, conduct or declarations as tend to establish knowledge or intent as an essential part of the inquiry, as well as the use of similar offenses to prove the continuity of the offense which is one of a system or to show guilty knowledge and intent, but not to prove the offense charged. R.S. 15:447 and 448 further provide that whatever is any part of the res gestae is always admissible, thus permitting evidence of other crimes which are necessary incidents or immediate concomitants of the charged crime or are part of a continuous transaction.
Judicial decisions have recognized additional purposes for which evidence of other crimes may be introduced. Such evidence has been admitted to prove motive, when that factor is a relevant and material issue. State v. Brown, 398 So.2d 1381 (La.1981). Evidence of other crimes has also been admitted to prove the identity of the perpetrator in the charged crime, when the other crimes are so-called "signature crimes" or are so nearly identical in method as to weigh substantially on the proof of identity in the charged crime. See State v. Prieur, above; State v. Moore, 278 So.2d 781 (La. 1972); State v. Hatcher, 372 So.2d 1024 (La.1979); and State v. Davis, 389 So.2d 71 (La.1980).
Because of the highly prejudicial nature of evidence of other crimes, this court has consistently excluded such evidence when there is only marginal relevance to the matter on trial, concluding that the prejudicial effect outweighs the probative value. However, in those situations in which the evidence of other crimes is highly relevant to the determination of a particular issue bearing on guilt or innocence of the defendant as to the crime on trial, such evidence is allowed because its independent relevancy to a material issue (other than defendant's bad character) is of such a high degree that its probative value outweighs the prejudicial effect. See State v. Hatcher, above, and the cases discussed therein.
Thus, the standard for determining admissibility involves a balancing test, and the standard is therefore difficult to define narrowly or precisely, because it is essentially explainable only in traditional terms of balancing probative value against prejudice.[2] *521 See State v. Moore, above. Clearly, such a determination of admissibility must, as noted in Moore, be made in accordance with general principles of relevancy, keeping in mind the highly prejudicial nature of such evidence. See footnote 2 in State v. Goza, 408 So.2d 1349 (La.1982).

III.
Our initial pretrial decision was based on the theories that the prior instance of child abuse (1) was "distinctively similar" and therefore admissible to show a system of beatings and (2) was "part of the res gestae showing the cause of death". However, on original hearing in this appeal after the conviction, the court decided that evidence of the prior incident was admissible to prove that defendant acted with general criminal intent, an element of misdemeanor manslaughter (a battery resulting in an unintended homicide).
The evidence of other crimes in the present case did not form part of the res gestae of the charged crime.[3] See, for example, State v. Brown, 340 So.2d 1306 (La. 1976). The incident occurred four days before the crime and was not an immediate concomitant of it. Neither can the prior incident reasonably be characterized as part of the same transaction, as no one suggests that the beating four days prior to the deaths was at all causally related as the medical cause of the death of the victims.
Furthermore, the disputed evidence is not admissible under R.S. 15:446 for the purpose of proving the continuity of the offense where the crime is one of a system. This case does not involve a continuing scheme or plan which encompasses two or more related crimes. There is no suggestion that the infliction on healthy children of a beating that resulted in bruises, four days before a second beating that resulted in death, was part of a larger plan or a conspiracy of any kind.
Finally, the evidence of the earlier beating was not admissible for the purpose of proving intent, within the contemplation of R.S. 15:446. In the present case, there was no real issue of whether defendant acted with general criminal intent, since there is no suggestion that the person who committed the battery resulting in the homicide did not clearly intend to use force or violence upon the person of the children. See R.S. 14:33. Manslaughter, as charged here, is an unintended killing resulting from a battery. The truly crucial issue in this case was the identity of the person who beat the children to death, and the entire defense was oriented toward the contention that this defendant did not commit the crime. There is no contention that although his beating killed them, his use of force against the children either was accidental or was the reasonable, privileged use of force to discipline minors. See R.S. 14:18(4).
We nevertheless conclude, for reasons different from those previously expressed, that the evidence of other crimes was admissible in this case because (1) the evidence *522 was highly relevant to the material issue of identity and (2) the probative value outweighed the prejudicial effect, under the particular facts and circumstances of this case.[4]

IV.
The crucial issue in this case, as stated earlier, was the identity of the person who committed the homicide. Prior decisions have allowed the admission of evidence of an earlier crime when both crimes are so-called "signature crimes" or are so unique or distinctively similar in method as to justify the conclusion that both crimes were committed by the same person. These decisions have justified the admission for the purpose of proving the identity of the perpetrator of the charged crime. Conceding that the purpose of proving who committed the charged crime is the "bottom line" purpose for offering virtually all of the evidence in a criminal trial, we nevertheless hold that the evidence was admissible to prove identity under the particular facts and circumstances of this case.
The determination of distinctive similarity or uniqueness is not dispositive of admissibility in a mechanical sense.[5] More appropriately, such matters should ultimately be considered more as factors in the process of determining the probative value of the evidence, to be eventually weighed against prejudicial effect, than for the purpose of fitting the evidence into one of the pigeonholes of admissibility fashioned by prior jurisprudence. Easy categorization is not always available, and admissibility should not be determined solely on the basis of pigeonholing or categorizing, but rather on the basis of weighing the degree of relevance of the evidence under the particular circumstances (and the corresponding probative value) against the prejudicial effect.
This case represents a situation in which categorization is difficult. However, the prior beating of the victims, while not so distinctively similar as to constitute a "signature crime", had a substantial probative tendency to prove that the defendant was their assailant under the particular facts of this case.
In the usual unwitnessed crime, the offender could be anyone in the world, and evidence that the defendant committed a similar crime previously has little independent relevance or probative value. The circumstances of this crime, however, exclude the reasonable probability that the offender was someone other than defendant or the children's mother. They were the only two people who had unobserved access to the children during the period fixed by the coroner as the possible range for time of death. Each in fact attempted to blame the other for the crime. Under these circumstances the fact of defendant's infliction of the beatings on the same victims four days earlier assumes substantial probative bearing on the probability that he committed the crimes, rather than the mother or other persons who were known to be in the house that evening and night. As between defendant and any other likely suspect, the behavior in having abused these children previously was unique to defendant and was sufficiently similar to the conduct involved in the homicide to increase its relevancy to a degree justifying admissibility. This high degree of relevance and probative value rendered the fact of the earlier beating more than mere character evidence and justified the trial court's decision on admissibility, *523 despite its unquestionably prejudicial impact. Therefore, the trial court did not abuse its discretion in admitting the challenged evidence.

V.
When this court considers questions of admissibility of evidence in advance of trial by granting a pretrial application for supervisory writs (rather than deferring judgment until an appeal in the event of conviction), the determination of admissibility does not absolutely preclude a different decision on appeal, at which time the issues may have been more clearly framed by the evidence adduced at trial. Nevertheless, judicial efficiency demands that this court accord great deference to its pretrial decisions on admissibility, unless it is apparent, in light of the subsequent trial record, that the determination was patently erroneous and produced an unjust result. For the reasons stated, this is not the case here.
Accordingly, the opinion of this court on original hearing is reinstated.[6]
DIXON, C. J., and CALOGERO and DENNIS, JJ., dissent with reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The "highly relevant" nature of the prior beating of these children by defendant was that it tended to prove defendant was mean enough and cruel enough to beat them to deathprohibited bad character evidence, convincing that defendant should be imprisoned, if not for the killing, then for the prior beating. The evidence was unduly prejudicial; guilty or not, the defendant didn't have a chance.
Furthermore, the introduction of this evidence of a prior beating was unnecessary. The defendant was the only person (whose actions were not accounted for by the evidence) who had an opportunity to commit the crime.
I know it is difficult to explain the reversal of a conviction when the evidence of defendant's guilt is so clear, but this is the only effective way in the Anglo-American judicial system to assure that the law is followed in the trial court. As we have said before, child abuse cases are often difficult of proof, but this one is not. We cannot here resort to a doctrine of "necessity" to abandon established objective standards for fair trials.
CALOGERO, Justice, dissenting.
I do not believe that evidence of defendant's prior beatings of the victims are admissible under State v. Prieur and its progeny. "Bad man" evidence is not admissible even if it might be broadly relevant.
NOTES
[*] Judges Pike Hall, Jr., Charles A. Marvin, and Jasper E. Jones, of the Court of Appeal, Second Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] See State v. Austin, 399 So.2d 158 (La.1981); Art. 1, § 16, La.Constn., LRS 15:271.
[2] There this court said that the incident of April 25, because of its similarity and proximity, would be admissible at the trial. 381 So.2d at p. 815.
[3] The Criminal Code states that some crimes do not have the element of intent. See CCr 8(2) and Comment, and LRS 15:444. In such crimes the State is nonetheless required to prove beyond a reasonable doubt that defendant's conduct or act was done voluntarily.
[4] La.Cr.C. Art. 3 sets forth the rule of interpretation:

"The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision."
[1] Defendant was originally indicted for second degree murder. R.S. 14:30.1. The prosecution later amended the charges to manslaughter, alleging that defendant killed the children while engaged in the perpetration of an intentional misdemeanor directly affecting the person (simple battery). R.S. 14:31(2)(b).
[2] Fed.R.Evid. 404(b) expresses the basic principle by stating that while evidence of other crimes is not admissible in order to prove the defendant's bad character (and hence as circumstantial evidence that defendant acted in conformity with his bad character), such evidence may be admissible "for other purposes". The rule then goes on to give an illustrative listing of the so-called exceptions under which other crimes evidence may be admitted, naming "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident". However, the broadness of the rule, as well as the advisory committee note, emphasize that "[n]o mechanical solution is offered" and that "[t]he determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other appropriate factors for making decisions of this kind ...."
[3] The res gestae are defined as:

"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence." R.S. 15:447.
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." R.S. 15:448.
[4] As Justice Dixon wrote in State v. Moore, above, the determination of the admissibility of other crimes evidence is essentially a relevancy determination. If the evidence meets the test of relevancy, then the probative value of the evidence (its tendency to prove a fact at issue) must be balanced against its undeniably prejudicial effect of showing a criminal disposition (or bad character). Various factors (as outlined in cases such as State v. Hatcher, above) must be weighed by trial courts in balancing probative value against prejudicial effect. Nevertheless, as in all matters involving relevancy questions, the factual circumstances presented to the trial court in the particular case are critical to the determination.
[5] Certainly, other crimes which meet such tests will generally be found admissible to establish identity, because the probative value of such highly relevant evidence will most often outweigh the prejudicial effect.
[6] On original hearing this matter was remanded with instructions to resentence defendant in compliance with C.Cr.P. Art. 894.1 and to consider the proffered evidence of a polygraph examination in ruling on the motion for a new trial. That remand was not affected by our reconsideration of the admissibility of the "other crimes" evidence.