399 So.2d 158 (1981)
STATE of Louisiana
v.
Michael James AUSTIN.
No. 80-KA-2403.
Supreme Court of Louisiana.
May 18, 1981.
Dissenting Opinion June 17, 1981.
Rehearing Denied June 22, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Paul D. White, Jr., Asst. Dist. Atty., for plaintiff-appellee.
Charles J. Yeager of Kennedy & Yeager, H. Dillon Murchison, Alexandria, for defendant-appellant.
CALOGERO, Justice.[*]
The Rapides Parish Grand Jury indicted defendant Michael James Austin for aggravated rape in violation of R.S. 14:42. Following trial, the twelve member jury returned a unanimous verdict of guilty of forcible rape. The trial judge sentenced defendant to twenty-five years at hard labor, two years to be without benefit of probation or parole. On appeal to this Court defendant argues that the verdict is contrary to the law and evidence because the state's case was based entirely on circumstantial evidence which did not exclude every reasonable hypothesis of innocence as required by R.S. 15:438.
The chief evidence linking defendant to the rape is a shoe print left on a magazine when the offender climbed through the window of the victim's trailer. The victim testified that it was dark and she did not see her attacker, even enough to identify his race. The police investigating the crime were unable to lift any latent fingerprints at the crime scene. In addition to the shoe print on the magazine, there was a shoe *159 print left in the soil under the window of the trailer. Police made a plaster cast of this print, but positive identification of the shoe which made the print could not be established.
The state's case rested primarily upon evidence given by F.B.I. agent Gary Kanaskie. The defense stipulated that Agent Kanaskie is an expert in the area of shoe print and tire tread impression identification. Agent Kanaskie testified that he compared the shoe print on the magazine with a tennis shoe supplied him by the Alexandria police and that he concluded that the tennis shoe made the print. The witness said that he was 100% certain that the print was made by that shoe to the exclusion of all the other shoes in existence in the world. He explained how the comparison was made on the basis of the wear sustained by the shoe. Using photographic enlargements of the print on the magazine and a print made by the tennis shoe, Agent Kanaskie pointed out that besides the size and design being the same the wear pattern on the horizontal cross ribs was the same on both. The agent marked with red arrows the points of correspondence between the two. He explained that the sole of a shoe develops a unique pattern as the result of general wear, being cut by sharp objects such as rocks and nails, and by foreign objects adhering to the sole.
To tie the shoe submitted to Agent Kanaskie with the defendant, the state offered the testimony of Investigator Herman Walters of the Alexandria police. Walters told of going to the home of defendant's grandmother, with whom defendant lived. According to Walters, defendant's mother was present at the time and took the pair of tennis shoes from under the bed in the rear room which was defendant's bedroom. Defendant's mother who was called by the state, corroborated that the shoes were under defendant's bed, but said that the policeman removed them from that location and gave her a receipt for them. She also conceded that defendant owned a pair of tennis shoes like the ones under his bed.
Although defendant did not take the stand in his own behalf, his sister testified that defendant and the son of another sister were approximately the same size and had worn the same clothing from time to time. It is this testimony on which defendant relies to argue that the circumstantial evidence presented by the state does not exclude every reasonable hypothesis of innocence. Defendant further stresses that Agent Kanaskie stated that his evidence could not establish what person was wearing the shoe at the time the print was made at the scene of the crime.
It is true that the state offered no evidence to rebut the testimony of defendant's sister. However, her testimony must be examined in its entirety to determine whether it establishes a reasonable hypothesis of innocence. Significantly, we note the testimony of this witness that defendant and his nephew were not members of the same household at the time of the crime. Additionally, this sister stated that defendant had lived with the other sister at the time of his graduation from high school which was several months before the instant offense. It was while defendant was living with his sister, i. e., months before and not around the time of the crime, that the two young men wore some of the same clothing, according to the testimony of this witness. Her testimony further establishes that the clothing being shared belonged to defendant alone and that there were heated arguments when the nephew borrowed the clothing without defendant's permission.
Defendant argues that because the magazine bearing the shoe print is dated June 1979 and the rape occurred on August 26, 1979, the print could have been left on the magazine at any time between June and August 26. This argument ignores the testimony of the victim that there was no shoe print on the magazine prior to the night of the rape. The magazine, a consumer newsletter, was on top of a small table beside the chair where the victim sat to watch television and she testified that she frequently read it while watching TV because it had many items of interest in it.
*160 It is the defense position that R.S. 15:438 and Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), require a reversal of the conviction. Under the Jackson standard, the appropriate question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. State v. Guillot, 389 So.2d 68 (La.1980). This Court has not yet enunciated a Jackson standard of review when the state's case is founded entirely upon circumstantial evidence although it has addressed the situation in general terms. See e. g. State v. Gould, 395 So.2d 647 (La. 1981).
Regarding circumstantial evidence, R.S. 15:438 sets forth the rule that, in order to convict, the evidence must exclude every reasonable hypothesis of innocence. Under Jackson, the evidence is viewed in the light most favorable to the prosecution and from the viewpoint of a rational trier of fact. Therefore, when we review a conviction based upon circumstantial evidence we must determine that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded.
While direct evidence consists of testimony from a witness who actually saw or heard an occurrence proof of the existence of which is at issue, such evidence is not always available. Frequently, the state must rely on circumstantial evidence to prove the existence of the fact to be proved. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[1] In this case, the fact in dispute is who committed the rape. Pertinent to that inquiry is who was wearing the tennis shoe at the time the footprint was made on the magazine as the attacker entered the trailer. The state offered the testimony of the police officer who found the shoe under defendant's bed, the testimony of defendant's mother who identified the shoe as the one removed from under her son's bed and said that defendant owned shoes like it, and the testimony of the F.B.I. agent who testified that the tennis shoe removed from under defendant's bed made the shoe print on the magazine.
The defense did not offer direct testimony to refute the evidence of the state. Rather, defendant's sister testified that at one time the son of another sister used to borrow defendant's clothing. She did not testify that on the night of the crime this nephew was wearing the fateful sneaker.
From the evidence presented by both the state and defense the jury was asked to infer the existence or nonexistence of the fact at issue: Was defendant wearing the tennis shoe which made the shoe print found at the crime scene? The inference that defendant was wearing the shoe must be a reasonable one. Further, to convict defendant, that inference made by the jury must exclude every reasonable hypothesis of innocence. It need not, however, exclude every other possible theory. For example, it is possible that someone had stolen the tennis shoes to wear while committing the rape and then placed the shoes under defendant's bed where they were found by the police. While this is a possible explanation, it is not a reasonable one for the set of circumstances and facts presented to the jury. The possibility that two people, one of them the defendant, entered the trailer on the night of the crime and that the other person perpetrated the rape is equally unlikely considering the evidence presented in the case. The only hypothesis of innocence which might be supported by the evidence is that the nephew, wearing defendant's tennis shoes, committed the rape. The jury *161 rejected that hypothesis as not being a reasonable one.
Viewing evidence presented at trial in the light most favorable to the prosecution, we note the following. The tennis shoe was found under defendant's bed and defendant's mother testified that he owned tennis shoes like it. Defendant stipulated to the expertise of the witness who testified that defendant's tennis shoe, to the exclusion of all other shoes in the world, made the print on the magazine at the crime scene. The victim testified that there was no print on the magazine prior to the rape.
Defendant relies to provide a reasonable hypothesis of innocence upon the testimony of his sister that he and the son of another sister were about the same size and that at times the nephew wore defendant's clothing. Her testimony is not of significant help when we consider the totality of her testimony. She only testified that at some time in the past the nephew upon some occasions wore defendant's clothing. Specifically she placed this time as well before the crime, not contemporaneous with it. Defendant lived with the nephew and the nephew's mother (another of defendant's sisters) at the time he graduated from high school in May 1979 and the rape occurred on August 26, 1979, at least two months after graduation. At the time of the rape defendant was living with his grandmother and the nephew was not a member of that household. Furthermore, the witness testified that the clothing belonged to defendant and that defendant and the nephew "often fought about it" when the nephew borrowed clothes without defendant's permission.
In reaching a verdict, the jury may consider the evidence and the lack of evidence presented at trial. C.Cr.P. art. 804. Defendant's sister testified that defendant and the nephew were not members of the same household at the time of rape. The sister who testified for the defense was not the sister whose son is the nephew alleged to have worn defendant's clothing sometimes. The witness did not testify that the nephew ever wore this pair of shoes and she did not testify that the nephew continued to borrow defendant's clothing after they ceased to be members of the same household. The nephew who defendant suggests may have been wearing the shoes the night of the rape did not testify although his aunt stated that at the time of the trial he lived with defendant's grandmother.[2]
Finally in deciding who could reasonably be considered to have been wearing the shoes the night of the rape, the jury heard testimony that the rape occurred between 11 p. m. on the night of August 25, 1979, and 1 a. m. on the morning of August 26, 1979. The exact time that the police recovered the shoes from under defendant's bed is not in the trial testimony. However, Investigator Walters testified that he went to defendant's house on August 28, 1979, and found the shoes at that time. Therefore, the shoes were under defendant's bed two days after the crime.
Faced with the facts and circumstances in evidence from which to draw an inference according to reason and common experience, the jury concluded that these facts and circumstances did not offer a reasonable hypothesis of innocence. After reviewing the evidence presented at trial, in the light most favorable to the prosecution, we conclude that a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded.

Decree
For the foregoing reasons, we affirm defendant's conviction and sentence.
AFFIRMED.
DENNIS, J., dissents with written reasons.
*162 DENNIS, Justice, dissenting.
I respectfully dissent. The state failed to present evidence sufficient to support a conviction under the standard of review required by Jackson v. Virginia.
Initially, I believe the majority has incorrectly invoked the presumption provided in La.R.S. 15:432 in order to buttress its conclusion that the Jackson requirements have been met. "The presumption of La.R.S. 15:432 does not arise if the witness is equally available to both the state and the defense, as in the instant case, for then the evidence is not `under the control of' either party." State v. Simms, 381 So.2d 472, 476 (La.1980). It is not clear from the record that the nephew which the defendant failed to call as a witness was unavailable to the state. Even if he was, it is still inappropriate to characterize the nephew as a witness "under the control" of the defendant. The defendant could hardly expect his nephew to take the stand and admit he wore the shoe that made the print found in the victim's living room.
Omitting the inferences the majority would draw from defendant's failure to call the nephew, I cannot agree that any rational trier of fact could find guilt beyond a reasonable doubt. The state's case against the defendant rested entirely on the circumstance that a shoe print matching that of defendant's tennis shoe was found in the victim's house. Without any other evidence whatsoever to link defendant to this crime, a reasonable doubt must remain as to whether it was the defendant who made the print. Or, in the majority's language, this circumstantial evidence does not exclude the reasonable hypothesis that someone besides the defendant was wearing the shoe that left the print. It is important to realize that we are not dealing with evidence in the form of a fingerprint, or palmprint, or bare footprint. We are faced with a quite detachable and portable item of clothing. The owner of a shoe cannot make a shoe print unless his foot is in the shoe. It is this crucial link in the chain of proof which is wholly without support in the evidence.
A survey of other states which have faced the issue of the sufficiency of a shoe print as circumstantial evidence to support a conviction fails to reveal a case which has relied on a shoe print alone to uphold the jury verdict. In other cases I have found there was at least some additional element of direct or circumstantial evidence which linked the defendant to the crime. See Cato v. State, 396 N.E.2d 119 (Ind.1979); State v. Burclaff, 137 Vt. 354, 404 A.2d 512 (1979), overruled on other grounds, [State v. Larose] 415 A.2d 210; Maddox v. State, 149 Ga.App. 110, 253 S.E.2d 456 (1979); Commonwealth v. Mangini, 478 Pa. 147, 386 A.2d 482 (1978); Walker v. State, 262 Ark. 331, 556 S.W.2d 655 (1977); Currington v. State, 342 So.2d 390 (Ala.App.1976), cert. denied, 342 So.2d 393 (Ala.1977); State v. Krajewski, 303 Minn. 37, 226 N.W.2d 293 (1975); State v. Black, 163 Mont. 302, 516 P.2d 1163 (1973); Palmer v. State, 10 Md.App. 152, 268 A.2d 582 (1970); State v. Hardinson, 81 N.M. 430, 467 P.2d 1002 (1970); Flowers v. State, 415 S.W.2d 178 (Tex.Crim.1967); State v. McGlathery, 412 S.W.2d 445 (Mo.1967); Smith v. Commonwealth, 375 S.W.2d 819 (Ky.App.1964); People v. Wynkoop, 165 Cal.App.2d 540, 331 P.2d 1040 (1958); Annotation: Footprints as Evidence, 35 A.L.R.2d 856. In Castello v. State, 373 S.W.2d 754 (Tex.Crim.1964), the evidence supported defendant's conviction of raping a 73 year old blind woman where a plaster cast of footprints in sand leading from the victim's residence to defendant's motel room matched the accused's tennis shoes, and the accused had made a voluntary statement admitting breaking the lock on the woman's door, entering, and having intercourse with her.
Perhaps the case in which the prosecution's case depended most heavily upon shoe print evidence was Palmer v. Maryland, supra. In that case, defendant was the former employee of a company which had been burglarized, and a print identified as having been made by defendant's boot was found impressed on a payroll journal sheet found on the floor of a ransacked office. However, there was also evidence placing the defendant in the vicinity of the office, *163 wearing the boot, around the time the crime took place. Also, it should be noted that the Maryland courts at that time reviewed convictions for sufficiency of the evidence under its then prevailing "some evidence" standard of review. I have been unable to discover any case, before or after Jackson v. Virginia, which has upheld a conviction based solely on the matching of a shoe print found at the scene of the crime with a shoe owned by defendant. For the foregoing reasons, I conclude that the evidence in this case is insufficient to support the conviction under the standard of review set forth in Jackson v. Virginia. The majority's holding, displaying its willingness to ignore the real possibility that the defendant was framed, or that the real culprit hid his own guilt by wearing another's clothing, improperly places upon the accused the burden of proving his innocence.
NOTES
[*] Judges Pike Hall, Jr., Charles A. Marvin, and Jasper E. Jones of the Court of Appeal, Second Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Pascal F. Calogero, James L. Dennis, Fred A. Blanche, Jr. and Harry T. Lemmon.
[1] Underhill's Criminal Evidence, § 15, Sixth Edition (1973). Wharton's Criminal Evidence, § 6, 13th Edition (1972), says "[c]ircumstantial evidence assumes a witness who has no knowledge of the facts in dispute, but knows of other facts and circumstances which, when offered in evidence, may permit the fact finder to infer that the facts in dispute existed or did not exist."
[2] In this regard we note that under R.S. 15:432 it is presumed that "evidence under the control of a party and not produced by him was not produced because it would not have aided him." We do not suggest that it is incumbent upon defendant to exculpate himself, but when defendant seeks to rebut the state's case with evidence of his own which, he contends, suggests a reasonable hypothesis of innocence, it is reasonable for the jury to expect that he will offer as witnesses those individuals best situated to testify accordingly.