CALOGERO, Justice.
In this matter, defendant Steven Glenn Hollie attacks his conviction on two counts of cruelty to animals. He claims that the state introduced insufficient evidence for the trial judge to have found him guilty. Because we agree that the totally circumstantial evidence does not exclude every reasonable hypothesis of innocence, we reverse defendant’s convictions and sentences and order him released.
By bill of information the state charged defendant with two counts of cruelty to animals in violation of La.R.S. 14:102. Following a bench trial, the judge found defendant guilty as charged, sentenced him to ten days in the Calcasieu Parish Jail and imposed a fine of $100.00 for each count with the sentences to run concurrently. We granted defendant’s application for review. 409 So.2d 652 (La.1982).
*543 This misdemeanor prosecution required four days to try and involved testimony from fifteen state and six defense witnesses. Among the witnesses were firearm experts and a special agent for the United States Fish and Wildlife Service. The complainant (and state’s principal witness) and the defendant are related (cousins) and apparently had some prior differences. The case was vigorously tried by both sides.
The incident which led to this prosecution happened when defendant, his brother and a Houston doctor friend were hunting ducks in Calcasieu Parish. It involved the shooting of three hunting dogs owned by David Wayne Gillis. The prosecution’s chief testimony came from Gillis, the complainant and owner of the slain dogs. It is Gillis’ testimony, coupled with some physical evidence, which makes out the best case for the state. Since, as will be seen, this case involves only circumstantial evidence and defendant questions the sufficiency of that evidence (Jackson v. Virginia, 443 U.S. 309, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), we will proceed to discuss Gillis’ testimony first with an eye toward determining whether, accepting this testimony and the other evidence, the state has proven enough to support a conviction under Jackson v. Virginia.
At trial Gillis related that he had gone hunting deer on the morning of December 27, 1980, taking with him four dogs trained to trail deer. One dog, Pooch, “hit a hot trail ... and bellowed.” The other dogs joined in the chase and began following the deer. Gillis estimated that he was three to four hundred yards from the dogs when he heard shooting. He first heard two shots quickly followed by three more shots. According to Gillis the dogs became silent and he presumed that someone had killed a deer. Gillis said that the area was rather brushy and as he came out into an open area he saw two men standing fairly close to one another. Gillis called out to inquire whether the men had gotten the deer. As Gillis approached the men, he recognized them as defendant Steven Hollie and defendant’s brother Ronald Hollie.
Gillis testified that he informed the Hollie brothers that his dogs had been “running” the deer and Ronald Hollie responded that the three of them would therefore share the deer. Gillis suggested that they skin the deer in the woods and the Hollies instructed him to “go off over yonder,” and they would skin the deer. Gillis protested that he would not leave the area and instead began looking for his dogs. He found one of his dogs lying dead about fifteen feet from the deer. Gillis said that he shifted his gun from one hand to another when he saw the dead dog and then looked up to see both of the Hollie brothers pointing their guns at him. Gillis accused them of shooting his dogs and continued to look for his other dogs. He located Pooch behind a tree. At this point, Ronald Hollie said that they were leaving and the Hollie brothers backed out of the area. Gillis remained with the dogs for a while and then went to the weigh station at Starks to call the law. When he arrived at the station, he met the authorities, who were coming to locate him after having been informed by the Hollie brothers that Gillis had stolen their deer and threatened their lives.
Ronald Hollie, called by the state, said that he, his brother and Dr. Farrell had been hunting ducks on December 27. After reaching their limit of ducks, they heard dogs running a deer and Ronald and Steven took up a “stand” to await the deer. Ronald related that the deer came past and he heard three shots as Steve shot the deer. Ronald said that he was about sixty yards from Steve and that he (Ronald) did not shoot at the deer. After the shooting of the deer, Ronald no longer heard the dogs which had been chasing it. Ronald testified that he arrived at the location of the deer approximately the same time as did Gillis. Ronald denied seeing any dead dogs in that area and initially stated that Gillis had not accused them of killing his dogs. After his attention was directed to a statement made shortly after the incident, Ronald remembered that Gillis “might have said something about dogs when we were backing off.”
*544 Defendant testified in his own behalf. He stated that he and his party heard the dogs chasing the deer and decided to take a “stand” in hopes that one of them could “get a shot at a deer.” The three men positioned themselves in different locations and, when the deer came through the woods, defendant shot the animal. Defendant said that he shot three times rapidly and the deer fell with the third shot. Defendant denied seeing any dogs other than his own Labrador. Defendant related that, as Ronald was trying to get their dog to stop chewing on the deer, Gillis came through the woods with his gun pointed in their direction. According to defendant, Gillis threatened to “kill us and leave us out there in the swamps ...” Defendant and his brother backed away from the encounter. As they were leaving, Gillis asked which way his dogs had gone. Defendant replied that he had not seen Gillis’ dogs. Defendant, his brother and Dr. Farrell left the area, went to defendant’s house, and then informed the sheriff of the threat. Defendant denied that Gillis had ever accused him or his brother of killing the dogs.
Dr. Farrell, the third member of defendant’s hunting party, testified that the three of them had gone duck hunting on December 27. On the way back from the hunt, the three heard what the doctor termed “a large group of dogs” which he supposed was “running a deer.” The three separated because the Hollie brothers wanted to see if they could get a shot at the deer should it come by. The barking got louder and then the doctor heard a volley of three to four shots. The witness stated that then he heard Steve Hollie yell that the deer was down. Next the witness heard a loud argument about whose deer it was. At no time did the doctor hear anything said about dogs, either during the encounter in the woods or as the three were returning to the Hollie home. When questioned about the sequence of shots and the barking of the dogs, the doctor stated that the barking stopped before the shots were fired and that he did not hear the dogs barking again after the shots.
After Gillis related to the sheriff that his dogs had been killed by the Hollie brothers, he accompanied law enforcement officials back to the site of the shooting. On this trip Gillis found another of his dogs lying dead in the branches of a fallen tree. The fourth dog was never found.
Defendant contends that the state’s evidence was insufficient for the trial judge to have found him guilty of killing the dogs beyond a reasonable doubt.[1] Under Jackson v. Virginia, supra, an appellate court is to view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. In this case the state presented only circumstantial evidence, there being no eyewitness testimony account of the shooting. Regarding circumstantial evidence, La.R.S. 15:438 sets forth the rule that, in order to convict, the evidence must exclude every reasonable hypothesis of innocence.
As we said in State v. Austin, 399 So.2d 158, 160 (La.1981):
when we review a conviction based upon circumstantial evidence we must determine that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded.
As already noted, there was no eyewitness testimony or other direct proof that defendant shot the dogs, nor even that anyone in his party did. This latter statement, however, might be countered by Gillis’ testimony that, as he ran, he heard a series of two and then three shots which is concededly consistent with felling the deer and shooting three dogs. Even if we assume *545 that this evidence proves that someone in the Hollie party shot the dogs (and even this is conjectural at best), we find that the circumstantial evidence is still insufficient.
The state’s evidence does not establish that defendant is the only person who reasonably could have shot the dogs. Gillis stated that when he found the two dead dogs both defendant, Steven Hollie, and Steven’s brother Ronald were in the vicinity and both were holding shotguns which they later pointed at him. Dr. Farrell had also been hunting with the Hollie brothers and Gillis referred to having seen another man as he followed the barking of the dogs to the location where he found the felled deer. Additionally, Gillis and the others all testified that there were a number of hunters in the general area that day. That Ronald Hollie, or another person other than defendant, might have shot the dogs, is a reasonable hypothesis.[2] The circumstantial evidence accepted most favorably to the state was simply not sufficient for a rational trier of fact to have concluded beyond a reasonable doubt that every reasonable hypothesis of the innocence of defendant Steven Hollie had been excluded. Jackson v. Virginia, supra; State v. Austin, supra.

Decree

For the foregoing reasons, defendant’s convictions and sentences are reversed and the defendant ordered released.
REVERSED.
DIXON, C. J., concurs.

. In this regard, it is important to note that all members of the Hollie party carried shotguns and were using number four buckshot. A ballistics expert testified that one fragment removed from one dog’s head weighed 37.5 grains which is heavier than the 20.5 grain weight of number four buckshot.

. Nor can the state validly argue that minimally defendant Steven Hollie was guilty as a principal, in the event Ronald Hollie did the shooting. A principal “directly commit[s] the action ... aid[s] and abet[s] in its commission or directly or indirectly counsel[s] or procure[s] another to commit the crime.” La.R.S. 14:24. If Ronald Hollie did shoot the dogs, it is at least as plausible, if not moreso, that the senseless killing of the dogs was Ronald’s individual act rather than an act urged by, or done in complicity with his brother, Steven, the defendant.