419 So.2d 837 (1982)
STATE of Louisiana
v.
Jacquelyn JACKSON.
No. 82-KA-0201.
Supreme Court of Louisiana.
September 7, 1982.
Rehearing Denied October 15, 1982.
*838 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Jack Peebles, Asst. Dist. Attys., for plaintiff-appellee.
Walter Sentenn, Jr., Dwight Doskey, Metaire, for defendant-appellant.
WILLIAM H. BYRNES, III, Justice Pro Tem.[*]
Defendant Jacquelyn Jackson was charged with cruelty to a juvenile in violation of La.R.S. 14:93[1] by a bill of information filed June 17, 1981. Jackson waived her right to a jury trial and was tried on August 6 and 7, 1981. She was found guilty as charged and sentenced on September 28, 1981 to 2 years in parish prison. The sentence was suspended and she was placed on three years active probation with orders to seek treatment from certain social agencies. Defendant appeals her conviction and alleges one specification of error, that the state's evidence was insufficient to support her conviction.
The juvenile in question, John Paul Jackson, was born to the defendant on Nov. 20, 1980. A case worker, Ms. LeBlanc, from the State Department of Human Development, first met with Jackson and her son in Jackson's trailer home in early December 1980. In the case worker's words, the infant "looked fine" at that time. The worker next saw the child on January 23, 1981 and at which time the infant looked healthy but "a little bit thin." The next time LeBlanc saw the child was on April 22, 1981. She described his condition as follows: "On that date when I saw him he appeared to be very thin. He had two little scabs on his upper, right forehead. His finger nails were excessively long and dirty. He had a rash on his chin, a rash around his chine area on his legs and he also had a little red spot on the back of his neck, above the nape." Jackson advised LeBlanc that she was going to take the child in soon for his three month shots. At that time the child was five months old.
LeBlanc next saw the child on May 21, 1981 as a result of an anonymous tip regarding the child's physical condition. The child abuse officer picked up Jackson at her place of employment and went to the baby sitter with Jackson to get the child. At that point the child was described as being very thin and pale. Defendant at that time told LeBlanc that she did not feel that there was anything wrong with the child and attributed the child's thinness to the fact that the child's father had a slim build.
The child was taken by LeBlanc to be examined by Dr. Sproles, a pediatrician.
*839 Upon receiving his diagnosis, the child was placed in foster care and Jackson was arrested the next day for cruelty to a juvenile in violation of La.R.S. 14:93.
Dr. Sproles, one of the doctors who examined the child, stated that the child had a markedly decreased subcutaneous fat content, a distended abdomen, as well as a marked non-responsiveness all of which indicated to him malnourishment for a period of some time.
Dr. Guy, who examined the child periodically as a result of the complaint, then testified that the child was grossly under nourished, dehydrated, and was lacking in the fatty tissue associated with small babies. The baby, in his words was very weak, had diminished reflexes, and did not have good muscle tone or strength all of which indicated a moderately severe malnourished condition. When asked to explain the term "moderately severe malnourishment", the doctor explained that severe malnourishment was near death. Dr. Guy was of the opinion that the malnourishment of the child occurred over a prolonged period of time which indicates to this court, as it obviously did to the trial judge, a period of ongoing abuse. Of particular interest to this court is Dr. Guy's statement that the only thing that was done to the child in the hospital was to feed him. The child gained 7 pounds in two months and since his discharge from the hospital, the child has continued to gain weight. The doctor further refuted defendant's claim that a milk allergy was a cause of the child's suffering inasmuch as the baby had gained weight during hospitalization on a cow's milk diet.
Further testimony indicated that at the time of the defendant's arrest, the child, now seven months old, had not received his three months shots. The child had not been to see a doctor until the defendant's arrest in spite of a recommendation by the social worker on April 27th that the child be taken for a physical examination. In light of the condition of the child at that time, the mother's excuse that she was too busy working is totally inadequate. Given the mother's work schedule and her attitude it appears to this court that, had the complaint against her not been registered when it was, medical attention would have been withheld from the child for much longer, in all probability causing irreversible physical and mental trauma and quite possibly death.
From testimony of the two doctors and Ms. LeBlanc, it is quite clear to this court that the actions of the mother did indeed constitute an abuse of her young child in violation of La.R.S. 14:93. We dismiss defendant's contention that there was no proof of suffering on the part of the child. The testimony of both doctors clearly indicates that the child did indeed suffer physical trauma as a result of this abuse.
The proper standard of review of the sufficiency of evidence was enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) where the court held that the reviewing court is to consider "the evidence in the light most favorable to the prosecution" to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original). 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573; State v. West, 408 So.2d 1302 (La. 1982); State v. Edwards, 400 So.2d 1370 (La.1981) Defendant contends that her conviction is based on circumstantial evidence insufficient to support the judgment. In State v. Austin, 399 So.2d 158, 160 (La. 1981) this court stated that: "[W]hen we review a conviction based on circumstantial evidence we must determine that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence has been excluded." This court further noted in Austin, supra that "[C]ircumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and experience". We must look to the inferences made by the trier of fact based on circumstantial evidence and these inferences need *840 only exclude all reasonable hypotheses, not every possible theory of innocence. We feel in this case that this burden has been met.
We see no error patent on the face of the record and for the above reasons we affirm the verdict and sentence handed down by the trial judge.
AFFIRMED.
DIXON, C. J., dissents with reasons.
CALOGERO, J., dissents. Under the Jackson v. Va. standard there was insufficient evidence to support the conviction.
DIXON, Chief Justice (dissenting).
I respectfully dissent. There is clearly insufficient evidence here to support a conviction for cruelty to children. The infant suffered from malnutrition, but there is no evidence that it was because of intentional acts of the mother nor of criminal negligence of the mother.
NOTES
[*] Judges Charles R. Ward, William H. Byrnes, III and David R. M. Williams of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice Dixon and Associate Justices Calogero, Dennis and Watson.
[1] Louisiana Revised Statute 14:93 states: Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense.

Whoever commits the crime of cruelty to juveniles shall be fined not more than one thousand dollars, or imprisoned for not more than ten years, with or without hard labor, or both.