421 So.2d 887 (1982)
STATE of Louisiana
v.
Danny Charles WASHINGTON.
No. 82-KA-0074.
Supreme Court of Louisiana.
October 29, 1982.
*888 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Tommy Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., for plaintiff-appellee.
William S. Carter, Jr., Dawkins, Coyle & Carter, Ruston, for defendant-appellant.
WARD, Justice Pro Tem.[*]
Danny Charles Washington was charged by a bill of information with aggravated arson, a violation of LSA-R.S. 14:51.[1] The defendant waived his right to a jury trial, and on August 18, 1981, he was tried before the District Judge who found him guilty as charged. Immediately after trial, the State charged that Washington was a multiple offender as defined in LSA-R.S. 15:529.1, and a hearing on the issue was set for October 29, 1981. On that date, after a trial of the matter the Trial Judge found that Washington had been convicted of two felonies before his conviction for aggravated arson, and the judge found him to be a multiple offender and sentenced him to ten years in prison, ordering the sentence to be served consecutively to any sentence Washington was then serving. Washington has appealed and specified three assignments of error. Of the three, only the first assignment is an argument asking for reversal of his conviction. The remaining two assignments concern his sentence as a multiple offender. In the assignment asking for reversal of his conviction, Washington contends that the Trial Judge erred when he found Washington guilty because there was insufficient evidence for that finding.
Because the main issue is whether there is sufficient evidence to support a conviction, a brief synopsis of the evidence will help to understand defendant's argument for reversal.
On January 3, 1981, the date of the fire, defendant was temporarily being held in Lincoln Parish jail at the request of officials of Union Parish because that jail was overcrowded. Defendant had been brought into the Lincoln jail on the night before the *889 fire and placed in a cell made of steel and concrete, no larger than about 8 feet by 10 feet. The only access to the cell was its solid steel door which held a small opening called a "food flap," a rectangular opening of four and one-half by twelve inches, used for giving food to prisoners without unlocking the cell door.
At approximately 2:25 p.m., on January 3, 1981, a fire broke out in the north end of the Lincoln Parish jail. Thick black smoke emanating from cell number five filled the entire north end hallway where only Washington was confined. Deputy sheriffs opened the door to cell five and observed that books, papers, plastic and pieces of a mattress, all of which had been piled together against the north end wall of the cell, were on fire. One of the deputies testified that, after feeling his way through the smoke, he found Washington silently sitting on his bunk and that he pulled or carried Washington out of the cell. Even though the fire was immediately next to him, Washington was conscious, but strangely enough, he was not coughing or making any sound at all.
During the defendant's trial, he sought to show that he did not set the fire, and he testified that shortly after his arrival at his jail cell, he had been approached by another prisoner, Ferguson, who had asked him an assortment of questions which the defendant had not wanted to answer. This exchange had become hostile, and Ferguson threatened Washington. Washington recalled yelling and screaming when he discovered his cell was on fire until the Deputy Sheriff opened his cell door.
The defendant produced other witnesses who testified that although none of them had actually seen anyone start the fire, they had seen Ferguson "thumping" matches toward Washington's cell. There was conflict in their testimony, but the inference was that because of the sudden acrimony between Ferguson and Washington, Ferguson had carried out his threats and set Washington's cell on fire by either pitching or dropping matches through the food flap in the door.
Although counsel for defendant did not file motions either for a judgment of acquittal or for a new trial, he argues in this appeal that the evidence was insufficient to sustain a conviction because it did not exclude every reasonable hypothesis of innocence. In his brief, counsel now relies upon Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) which sets constitutional standards for appellate court review of guilty verdicts. Even though the issue was not preserved for appellate review by means of motions either for judgment of acquittal or for new trial, we have considered the applicable standards and arguments that appointed counsel now urges.
This Court has recognized that Jackson v. Virginia requires a change of the standards of appellate review in Louisiana. State v. Gould, 395 So.2d 647 (La.1981), State v. Austin, 399 So.2d 158 (La.1981). Although in the past some evidence of guilt has been held to be sufficient to sustain a guilty verdict, today because of Jackson, more is required. Nevertheless, the scope of appellate review of a verdict of judge or jury is not to determine whether this court agrees with the verdict, which presumably is based on evidence which proves guilt beyond a reasonable doubt and, when circumstantial, also excludes every reasonable hypothesis of innocence. LSA-R.S. 15:438. Appellate review, of a trial court's denial of either a motion for a new trial or a motion for judgment of acquittal in non-jury cases, is limited to a determination of whether there is sufficient evidence to support a verdict.
Again, although there is an absence of either motion, we have considered the evidence to determine whether it meets constitutional standards of both Jackson v. Virginia, supra, and because this is a circumstantial evidence case, State v. Austin, supra. Hence in cases of direct or direct and circumstantial evidence before this court will reverse a verdict of guilty, we must be convinced that even when the evidence is viewed in the light most favorable to the State, no rational trier of fact would conclude that defendant's guilt had been *890 proved beyond a reasonable doubt. When, however, the evidence consists only of circumstantial evidence, as in this case, current standards of due process require a greater degree of proof to support a conviction, and the scope of appellate review in circumstantial evidence cases has been established by this court in State v. Austin, supra:
Regarding circumstantial evidence, R.S. 15:438 sets forth the rule that, in order to convict, the evidence must exclude every reasonable hypothesis of innocence. Under Jackson, the evidence is viewed in the light most favorable to the prosecution and from the viewpoint of a rational trier of fact. Therefore, when we review a conviction based upon circumstantial evidence we must determine that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded.
In the instant case, while the factual issues may lead reasonable men to different conclusions, we hold that the evidence is sufficient to support a conviction, it meets the standards of Jackson and Austin.
In the same specification of error, counsel's argument of insufficient evidence merges into a complaint that the Trial Judge erroneously shifted the burden of proof to the defendant. Defense counsel interprets a statement by the Trial Judge to mean that he found the defendant guilty because the defendant had not proved that the other prisoner, Ferguson, had set the fire, therefore, he argues, the Trial Court erred in shifting the burden of proof to the defendant to show a reasonable hypothesis of innocence.
We disagree. The Trial Judge, in a lengthy explanation for his finding of guilt, stated that he was not impressed by the credibility of defendant's witnesses because of the demeanor of at least one witness and conflicts in the testimony of others. The statement by the Judge that he did not believe defendant's witnesses and that defendant had not proved Ferguson set the fire, when considered in context, was merely an explanation that, although the defendant had rested his case on that hypothesis, the Judge was rejecting it as a reasonable explanation for the fire, and, therefore, the only reasonable hypothesis was that the defendant started the fire and committed the crime.
A review of the Trial Judge's entire explanation for his verdict clearly shows that he placed upon the State the burden of proving the case by proving defendant's guilt beyond a reasonable doubt and excluding every reasonable hypothesis of innocence. We affirm defendant's conviction.
In the next two assignments of error, defense counsel contends that Washington's sentence should be vacated. To support this contention, defendant argues that the Trial Court erred both in refusing his motion to quash count three of the multiple bill and in granting the State's motion to revise the minutes of the Court proceedings of that conviction.
The conviction in count three had occurred in the District Court of Union Parish and was for simple criminal damage to property in excess of $500.00. Washington had represented himself during the proceedings after he had dismissed his court-appointed attorney because he believed the attorney was "doing nothing for him" in the case and because, or so he said, the attorney had told the defendant he was "not interested in the case."
The original minutes did not reflect that Washington waived his right to court-appointed counsel, and the Trial Judge ordered them revised to show that Washington waived that right. The certified copies of both the original minutes and of the amended minutes are in the record, and both documents reflect that the Trial Judge advised the defendant of his right to court-appointed counsel. That record, however, does not indicate, as it must, that Washington's waiver of that right was made intelligently and voluntarily so that his decision to represent himself was a clear and *891 unequivocal choice, State v. Hegwood, 345 So.2d 1179 (La.1977). What is clearly absent from the record and from both the original and amended minutes, is any showing that the Trial Court had adequately informed the defendant of the dangers and disadvantages of representing himself. In pro se cases the record must affirmatively show that a defendant was apprised of the consequences of waiving counsel to support the conclusion that defendant's waiver was knowing and informed. City of Monroe v. Wyrick, 393 So.2d 1273 (La.1981), State v. Bell, 381 So.2d 393 (La.1980).
We conclude that the minutes, even as revised, were insufficient to prove the prior conviction in count three as a basis for the enhancement of Washington's sentence as a multiple offender.
The conviction is affirmed. The finding by the Trial Judge that Washington is a multiple offender, however, is reversed, and accordingly, the sentence is vacated. We remand to the Trial Court for both a new hearing on the question of whether Washington is a multiple offender and for resentencing after resolution of that question.
BLANCHE, J., dissents from reversal of the sentence for reasons assigned by LEMMON, J.
LEMMON, J., dissents from reversal of the sentence and assigns reasons.
LEMMON, Justice, dissenting from reversal of the sentence.
I disagree that the prior conviction cannot be used for enhancement purposes on the basis of the present record.[1]
The record, consisting of the minute entry and the corroborating testimony of the prosecutor who handled the prior conviction, shows that the trial court advised defendant of his right to counsel and to court-appointed counsel, if desired; that the trial court, at defendant's request, appointed an attorney to represent defendant; that the trial court, upon granting defendant's request to discharge his initially-appointed counsel, again advised defendant of his right to court-appointed counsel, which he rejected; that the trial court then offered to order the initially-appointed attorney to be available for consultation at trial, which defendant also rejected; that the trial court on the day of trial again advised defendant of his right to court-appointed counsel, which defendant waived; and that the court then appointed another attorney to sit with defendant throughout trial and to advise him. The record further shows that defendant had made at least 50 appearances in criminal proceedings in that parish and was thoroughly familiar with court procedures.
While I agree that trial judges should determine that a defendant's exercise of his right to represent himself is based on an intelligent decision, which includes an awareness of the "dangers of self-representation", invalidity of the conviction is not necessarily required when the record does not contain a colloquy which reveals the basis for this determination, especially when the conviction is not attacked until the state seeks to use it for multiple offender purposes. The totality of circumstances should be considered in each case.
The record establishes that defendant knowingly and intelligently waived his right to court-appointed counsel.[2] The present record also establishes, in my opinion, that the trial court adequately insured that defendant's decision to represent himself was voluntarily and knowingly made and that the trial court adequately protected defendant's right to a fair trial.
I would therefore affirm the sentence on the basis that defendant was proved to be a third offender.
NOTES
[*] Judges William H. Byrnes and David R.M. Williams of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Pro Tempore, with Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] LSA-R.S. 14:51. Aggravated arson is the intentional damaging by any explosive substance or the setting fire to any structure, watercraft, or movable whereby it is forseeable that human life might be endangered.

Whoever commits the crime of aggravated arson shall be imprisoned at hard labor for not less than six nor more than twenty years, and shall be fined not more than twenty-five thousand dollars. Two years of such imprisonment at hard labor shall be without benefit of parole, probation, or suspension of sentence.
[1] Presumably, the remand will allow both sides to present additional evidence on the issue of whether the trial judge adequately informed defendant of the dangers of representing himself, as well as any other evidence bearing on the knowing nature of his decision to do so.
[2] He also has no complaint that his right to represent himself was violated, as in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), because the trial court granted his request to represent himself.