CRAIN, Judge.
Peggy Lilly was indicted by a grand jury on August 26,1980, charged with the negligent homicide of her infant son, a violation of La.R.S. 14:32. She pled not guilty, waived trial by jury, and was tried by the judge alone. The trial judge found defendant guilty as charged and sentenced her to five years imprisonment in the custody of the Louisiana Department of Corrections.
In bringing this appeal, defendant urges three assignments of error:
1. The trial court committed error when it found the defendant guilty of negligent homicide based on insufficient evidence.
2. The trial court committed error when it imposed an excessive sentence.
3. The trial court committed error when it denied defense motion for directed verdict of acquittal.
Assignment of Error Number 2 was not briefed and is thereby considered abandoned. Uniform Rules — Courts of Appeal 2-12.4.
On August 14, 1980, defendant’s eight day old son died. The infant had been home, in defendant’s care, for five days immediately preceding his death. During the morning of August 14, 1980, the infant’s paternal grandmother asked Avis Hutchinson, a nurse’s aide and sister of defendant’s common law husband (the natural father of the infant), to view the baby. When defendant would not allow Mrs. Hutchinson to examine the baby closely, Mrs. Hutchinson went to a neighbor’s house and called the fire department. The firemen who responded to the call transported the baby to Baton Rouge General Hospital where he was pronounced dead. An autopsy report later revealed that the infant had died as a result of pneumonococcal meningitis. Defendant was arrested after law enforcement authorities determined that defendant had not attempted to procure medical assistance for the critically ill infant prior to his death.
*1315 ASSIGNMENTS OF ERROR NUMBERS 1 AND 3:
By means of Assignments of Error Numbers 1 and 3, defendant contends that the state’s evidence was insufficient to support her conviction.
La.C.Cr.P. art. 778 provides that in a trial before a judge alone, the court shall enter a judgment of acquittal if the evidence is insufficient to sustain a conviction. The applicable standard for reviewing sufficiency, whether raised by formal assignment or motion for acquittal, is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the essential elements of the crime were proven beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La. App. 1st Cir.1983).
The crime of negligent homicide is defined as the “killing of a human being by criminal negligence.” La.R.S. 14:32. Criminal negligence is defined in La.R.S. 14:12 as follows:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of cafe expected to be maintained by a reasonably careful man under like circumstances.
The Reporter’s Comment to La.R.S. 14:32 lists within the scope of that article the “death of a child or other helpless person caused by the gross neglect of one charged with his custody and care.”
Direct evidence as to the condition of the infant during the days immediately prior to his death was provided by testimony of Scott Jones, defendant’s older son who was eleven years of age at the time of trial, and James Jones, defendant’s common law husband.
Scott Jones testified that he did not remember seeing his mother feed the baby and he often changed the diapers. He also remembered that the baby cried a great deal and vomitted a couple of times. However, Scott testified that he was not at home during most of the five day period directly preceding the infant’s death.
James Jones, the infant’s natural father, testified that the baby appeared fine on the afternoon prior to his death. He also testified that he never saw the baby vomit and observed him take a bottle feeding on several occasions.
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Norman, 448 So.2d 246 (La.App. 1st Cir.1984), reversed in part on other grounds, 452 So.2d 1178 (La.1984). In oral reasons provided by the trial court in denying defendant’s motion for acquittal, Scott Jones’ testimony was discounted as providing no insight into the baby’s condition prior to his death. Scott was only seven years of age at the time and had spent a very short time in the home when the baby was present. The trial court also discounted James Jones’ testimony as totally incredible.
Earl K. Long Hospital records introduced at trial, showed that the baby, who was born on August 6, 1980, was in good physical condition when discharged from that facility on August 9, 1980. During the morning of August 14, 1980, the baby was observed at defendant’s home by Sergeant Callihan of the East Baton Rouge Parish Sheriff’s Office, by Avis Hutchinson, the baby’s aunt, and by Kenneth Mizell, a fireman. Kenneth Mizell testified that he observed several sores on the baby’s body[1] and that the baby appeared to be dead at the time of his arrival at defendant’s home following Mrs. Hutchinson’s call for assistance. Apparently, none of these witnesses observed the baby prior to his death.
*1316 Defendant contends that her conviction is based on circumstantial evidence insufficient to support the judgment. The statutory rule as to circumstantial evidence is that assuming every fact proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. State v. Nealy, 450 So.2d 634 (La.1984).
We must look to the inferences made by the trier of fact based on circumstantial evidence and these inferences need only exclude all reasonable hypotheses, not every possible theory of innocence. State v. Jackson, 419 So.2d 837 (La.1982). We feel in this case that this burden has been met.
The testimony of Dr. James Freeman, a pathologist who assisted in the autopsy of the baby, was extensively relied on by the trial court in denying defendant’s motion for acquittal.[2] In pertinent part, the trial judge stated he was convinced from Dr. Freeman’s testimony that the child must have manifested severe symptoms several days prior to his death. These symptoms would have included: failure of the child to eat; a high fever, in excess of one hundred and three degrees; projectile vomiting; and bulging of the soft tissue of the child’s head.[3] Further, defendant, as the primary provider of care for the child, failed to observe or react to those symptoms and such failure to act directly resulted in the death of the child. The causal link was based on the testimony of Dr. Freeman that he had successfully treated each of ten similar cases encountered in his private practice.
The trial court properly dismissed as unreasonable the hypotheses that no significant symptoms were manifested by the newborn child prior to his death or that defendant’s failure to seek medical care did not constitute gross negligence. For the foregoing reasons these assignments of error are without merit.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.

. The child when autopsied had observable markings in the facial and wrist areas. However, these body sores were not a consideration in the trial court’s findings. There was no evidence as to who might have abused the child nor was there any evidence that the sores contributed in any way to the child’s death.

. Defense counsel submitted the case after the state had rested and the trial court had denied his motion for acquittal. The trial court thereafter adopted the oral reasons for denying direefed verdict of acquittal in support of the guilty verdict.

. In addition, the child had lost ten per cent of his body weight during the eight days of his life.