SEXTON, Judge.
The defendant, Arthur Winzer, was charged with three counts of simple burglary. He was convicted following a jury trial and was thereafter given a 24-year sentence as a multiple offender.
Defendant now appeals, setting forth six assignments of error. Finding merit to defendant’s claim of lack of sufficient evidence to convict, we reverse defendant’s conviction.
On October 14, 1986, vehicles belonging to Christy Joseph, Kenneth Snead, and Grayson Keith were burglarized while the vehicles were parked on the business premises of Stone Container in Arcadia, Louisiana. At the time of the burglaries, the owners of the vehicles were on the job at Stone Container.
Mr. Joseph had a .12 gauge shotgun and a .22 caliber semi-automatic rifle stolen from his truck; Mr. Snead had speakers stolen from his vehicle; and Mr. Keith had a Winchester Model 1400 shotgun stolen from his vehicle.
Defendant Arthur Winzer and a co-defendant, Roy Tobin, were arrested and charged with these burglaries. Roy Tobin subsequently pled guilty and was sentenced. He testified at trial on behalf of the defendant.
Laverne Foster, the defendant’s first cousin, testified that the defendant and To-bin came to her house on the night of the burglary at around 10:30 p.m. Ms. Foster testified that she removed a splinter from *766 the defendant’s knee and that his leg was scratched. Ms. Foster was outside of her house with Michael “B.B.” Williams when the defendant and Tobin arrived. She further testified that B.B. Williams went to work that night, a fact which was contradicted by other testimony.
On rebuttal, Ms. Foster testified that (contrary to the testimony of other witnesses) the defendant was not at her house playing cards on the evening of the burglaries, and neither was the defendant’s girlfriend. Additionally, Ms. Foster stated that B.B. Williams went to work that night at around 11:30 p.m. Further, she testified that B.B. Williams did not leave the house that night before going to work. Ms. Foster stated that Mr. Williams never spoke to her about any guns, but did mention something to her about going to Bossier to sell some guns on one occasion.
B.B. Williams, Ms. Foster’s boyfriend, testified that he was at Laverne Foster’s house on October 14, 1986, the night of the burglaries, and indicated that this is where he stays most of the time. His testimony implicated Roy Tobin, the previously-pled co-defendant, more than anyone else. He testified that he did not leave home that day, although he may have made a quick trip to the store. He further testified that he did not leave the house on the night of the burglary in the company of Roy Tobin or Arthur Winzer.
Mr. Williams testified that he saw Roy Tobin and Arthur Winzer between 9:30 and 10:00 that night and that they came to Laverne Foster’s house together on foot. He did not, however, see Ernestine Townsend, the defendant’s girlfriend, nor did he see Betty Winzer, the defendant’s mother. (This testimony contradicts testimony from other witnesses.)
Mr. Williams denied any involvement in the burglaries and testified that he worked on the evening of the burglaries. Williams testified that Tobin said that he had gotten the guns out of some trucks by the chicken plant and asked him if he knew anyone who could buy some guns. The defendant was merely standing next to Tobin at the time. He testified that Mr. Tobin asked him to take him to Bossier in order to sell the guns. He said that the defendant was with Tobin, but Mr. Tobin was doing all of the talking. He further testified that it was Tobin who told him where to drive in order to retrieve the stolen articles to take them to sell. At that place, Tobin and the defendant went behind a house, and when they returned Tobin was carrying the guns and the defendant was carrying a small tool box. (None of the victims testified that a tool box was one of the items taken from their vehicle in the instant offenses.)
This group then proceeded to Bossier City, where they picked up someone named “Squirrel.” Squirrel directed them to a trailer in the Tony Lewis Trailer Park, where Tobin and Squirrel exited the vehicle and made contact with a heavyset white male. Tobin, Squirrel, and the heavyset male came out of the trailer and went to the trunk of the vehicle where they reviewed the goods. The white male gave $70 to Tobin for the items. After the sale, Tobin distributed money to everyone in the car.
Mr. Williams indicated he received $15 that was to pay for his gasoline for the trip. He further testified that the defendant received approximately $10, and that the others in the vehicle received varying amounts.
The defendant denied any involvement in the burglary and claimed to have been home with his girlfriend on the night of the burglaries. He acknowledged going with the others when the guns were sold, but that he did not speak with Roy Tobin or B.B. Williams about selling the guns and knew nothing about the guns being stolen. Defendant acknowledged that he received $10 from the sale of the guns and said he thought that they were sold for a total of $70.
Roy Tobin, the previously-pled defendant in the same crimes, testified that the defendant was not present at the time of the burglary or when it was planned, and that Tobin and B.B. Williams, the prosecution’s chief witness, actually committed the burglary. Most of his testimony consisted of a *767 description of the events on the evening of the burglaries.
Tobin admitted to being the same Roy Tobin that pled guilty to a prior simple burglary of an inhabited dwelling and also to the three counts of simple burglary for which the defendant was being tried.
Tobin also testified that B.B. Williams worked at ConAgra, a chicken processing plant across from Stone Container (the site of the burglaries) and was on vacation at the time that the burglaries were committed. This testimony was in direct contradiction to that of Williams, who testified that he went to work on the evening that the burglaries were committed.
A substantial amount of the testimony focused upon the scenario on the evening of the burglaries, specifically who was gathered at whose house. There are many inconsistencies and discrepancies between the various accounts of who was at various houses playing cards or drinking. Most of these accounts are irreconcilable.
Relevant to the morning that the individuals went to Bossier City to sell the guns, Tobin’s testimony was substantially in agreement with all of the other testimony. However, Tobin testified that the defendant was not present when the swag was sold.
Raymond Gaudet, the personnel director at ConAgra, the employer of B.B. Williams, testified that Williams was on vacation the week of the crime. B.B. Williams’s time-card, Exhibit D-l, substantiated Mr. Gau-det’s testimony. Mr. Gaudet further testified that B.B. Williams did not work at ConAgra while on vacation because his ti-mecard would show that, and it did not.
The defendant assigns six errors, which may be broken down into three categories: sufficiency of the evidence, errors patent, and the excessiveness of the sentence. Because of the result we reach, we only consider the question of the sufficiency of the evidence.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.
When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Captville, 448 So.2d 676 (La.1984). Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Austin, 399 So.2d 158 (La.1981). In all cases wherein an essential element of the crime is not proven by direct evidence, but by circumstantial evidence, LSA-R.S. 15:438 applies.* This circumstantial evidence rule does not establish a standard stricter than reasonable doubt but “it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence.” State v. Chism, 436 So.2d 464, 470 (La.1983).
The evidence when viewed in a light most favorable to the prosecution reveals the following:
1) That on the evening of October 14, 1986, three vehicles were burglarized in the parking lot of Stone Container in Arcadia, Louisiana. Items taken *768 from those vehicles include three guns and a pair of speakers.
2) That the defendant was seen in the presence of Roy Tobin on the evening of the burglaries.
3) That Roy Tobin made several inculpa-tory statements regarding the burglaries on the evening of the burglaries and the evening before.
4) That B.B. Williams transported Roy Tobin and several other individuals to Bossier City on the morning following the burglary to sell guns. Defendant was one of those individuals in Mr. Williams’ vehicle during that excursion.
5) That B.B. Williams received $15 from the sale of the guns, that the defendant received $10 from the sale, and that Roy Tobin also disbursed small amounts to the other individuals in the car.
6) That Roy Tobin had pled guilty to the burglaries.
None of the testimony placed the defendant at the scene of the burglaries nor did it indicate that he had anything to do with the planning or execution of the burglaries. At best, the evidence shows that the defendant, in the company of the confessed burglar Tobin after the offense, helped To-bin retrieve the swag and accompanied To-bin and others to sell the stolen items. In all other regards, none of the evidence indicates that the defendant was involved. The testimony of Mr. Tobin indicated that it was B.B. Williams and not the defendant who was involved with the burglary. Although B.B. Williams denied that he was involved in the burglary, he did not identify the defendant as being the person who was. Therefore, there was simply no evidence presented placing the defendant at the scene of the burglary.
In addition to the lack of evidence presented placing defendant with the other parties the night of the crime, the evidence revealed that the state’s chief witness received more money from the sale of the guns than did the defendant, a fact which is inconsistent with the hypothesis that the defendant took part in the burglary.
We therefore have no difficulty determining that the evidence, when viewed in the light most favorable to the prosecution, is insufficient to support the convictions here appealed. Accordingly, defendant’s convictions are reversed, the sentence is vacated, and he is ordered discharged.
REVERSED.

 LSA-R.S. 15:438 reads as follows:
§ 438. Circumstantial evidence
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.